Richard A. ROVNAK, II, Appellant,

v.

**The STATE of Texas, Appellee.**

**No. 06–98–00062–CR.**

Court of Appeals of Texas, Texarkana.

Submitted March 24, 1999.

Decided April 13, 1999.

Clifton L. Holmes, Holmes Law Office, Longview, for appellant.

Richard Townsend, County Atty., Daingerfield, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

Richard Rovnak appeals his conviction for possession of marihuana in an amount of 2,000 pounds or less, but more than fifty pounds. After the trial court denied Rovnak's motion to suppress, Rovnak entered a plea of guilty pursuant to a plea bargain agreement. The trial court assessed punishment at five years' confinement in the TDJC–ID, probated, and a $2,000 fine. Rovnak timely filed a general notice of appeal.

Rovnak contends the trial court erred in denying his motion to suppress because the warrantless search which produced the complained-of evidence violated his right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments of the United States Constitution. Rovnak also contends the trial court erred in denying his motion to suppress because the warrantless search violated Article I, § 9 of the Texas Constitution and Article 38.23 of the Texas Code of Criminal Procedure.

On March 4, 1997, Officer Harvey Lyn Beasley of the Ark–La–Tex Narcotics Task Force was working narcotics interdiction on Interstate 30 in Morris County, Texas. Officer Beasley stopped Rovnak for exceeding the speed limit. Officer Beasley approached Rovnak and asked him for his driver's license and vehicle registration. Rovnak could not produce his driver's license and advised Officer Beasley that the vehicle was a rental vehicle. He gave Officer Beasley the rental agreement that stated the vehicle had been rented by Robert Kidd. Rovnak's name did not appear on the agreement as an approved driver.

Rovnak testified that he and Kidd went to the rental agency together. Kidd rented the car using his credit card, because Rovnak did not have a credit card. The Budget employee handed Kidd the keys to the rental vehicle, and Kidd handed them to Rovnak. Kidd returned to his car and left. Rovnak drove the rental vehicle away. Rovnak further testified that the Budget employee "knew what was occurring."

Officer Beasley issued Rovnak a warning citation and noted that Rovnak appeared very nervous. Officer Beasley testified that Rovnak told him he was coming from Houston, where he had been visiting a friend, and was going back home to Ohio. Officer Beasley thought the route Rovnak was traveling was unusual for someone traveling from Houston to Ohio. He then asked Rovnak if there were any drugs in the vehicle, and Rovnak told him there were not. Officer Beasley asked for consent to search the vehicle, and Rovnak told Officer Beasley he could check his luggage, which was on the back seat. When Officer Beasley began to search the luggage in the back seat, he smelled the odor of marihuana. A search ensued, and marihuana was found in zipper bags in the trunk of the car. Rovnak filed a pretrial motion to suppress the evidence, a hearing was held, and the trial court denied the motion. Subsequently, Rovnak pleaded guilty and the trial court assessed punishment consistent with Rovnak's plea bargain.

A trial court's ruling on a motion to suppress lies within the sound discretion of that court.[1] At the hearing on the motion, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony.[2] The reason for this rule is that the trial court, who observes the demeanor and appearance of the witnesses, is in a better position to determine their credibility than is the appellate court, who reads their testimony as it appears in the record. Therefore, an appellate court must view the record evidence and all reasonable inferences therefrom in the light most favorable to the trial court's ruling and must sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case.[3]

Rovnak contends the search occurred without his consent and was not justified by any exception to the warrant requirements of either the United States or Texas Constitutions. Rovnak contends that the ultimate issue to be decided on appeal is the issue of standing.

First, we will address whether Rovnak had standing to challenge the search. The purpose of both the Fourth Amendment and Article I, § 9 "is to safeguard an individual's legitimate expectation of privacy from unreasonable governmental intrusions."[4] An accused has standing under both constitutional provisions to challenge the admission of evidence obtained by a governmental intrusion only if he had a legitimate expectation of privacy in the place invaded.[5] Furthermore, the accused, because he has greater access to the relevant evidence, has the burden of proving facts establishing a legitimate expectation of privacy.[6] To carry this burden, the accused must normally prove: (a) that by his conduct, he exhibited an actual subjective expectation of pri-

1. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App.1996).

2. *Id.* at 138 (citing *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990)).

3. *Id.*

4. *Villarreal,* 935 S.W.2d at 138 (citing *Richardson v. State,* 865 S.W.2d 944, 948 (Tex.Crim.App.1993)).

5. *Villarreal,* 935 S.W.2d at 138 (citing *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978); *Richardson,* 865 S.W.2d at 948–49; *Fuller v. State,* 829 S.W.2d 191, 202 (Tex.Crim.App.1992)).

6. *Villarreal,* 935 S.W.2d at 138 (citing *Calloway v. State,* 743 S.W.2d 645, 650 (Tex.Crim. App.1988)).

vacy, i.e., a genuine intention to preserve something as private; and (b) that circumstances existed under which society was prepared to recognize his subjective expectation as objectively reasonable.[7] The following, at least, are relevant to the court's determination of whether the accused's subjective expectation was one that society was prepared to recognize as objectively reasonable: (1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy.[8]

■ Rovnak contends he had standing to challenge the search because he possessed a reasonable expectation of privacy in the vehicle, as evidenced by both Robert Kidd's permission and the rental agency's tacit permission to drive the vehicle. The rule is established that if an appellant cannot show he had a legitimate expectation of privacy in the vehicle, he does not have standing to contest its search. When the legality of a search is in issue, the defendant bears the burden of proving *his own* privacy rights were violated.[9]

■ It is established in this state that a defendant has standing to challenge the search of an automobile he does not own if he shows he gained possession of the borrowed car from the owner or one authorized to give permission to drive it.[10] Rovnak contends *United States v. Kye Soo Lee*[11] is dispositive of the issue of Rovnak's standing. In *Lee,* the court held that the driver of a Ryder truck and his passenger had standing to challenge a search of the vehicle because the third party named in the rental agreement as the renter of the vehicle gave both the driver and the passenger permission to drive the truck. While this case is on point, cases from the Fifth Circuit Court of Appeals, Texas, and other circuits have rejected this reasoning and held that an unauthorized driver does not have a legitimate expectation of privacy in the vehicle he is driving. Following is a summary of these cases.

7. *Villarreal,* 935 S.W.2d at 138 (citing *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *Richardson,* 865 S.W.2d at 948–49). The court in *Villarreal* stated that the court of appeals had acted properly in deciding *de novo* the question of whether appellant's subjective expectation of privacy was one that society was prepared to recognize as reasonable, because that question was a question of law. In *Chapa v. State,* 729 S.W.2d 723, 728 n. 3 (Tex.Crim.App. 1987), the Court of Criminal Appeals explained:
> Whether a particular expectation of privacy is one society is willing to recognize, however, [as reasonable] is in the nature of a legal rather than a factual inquiry. All that is necessary to be proven as a factual matter is the particular context in which appellant [the defendant] harbored that expectation. It is then left to be resolved as a matter of law whether in the context shown society is willing to sanction that expectation as reasonable....

Denominating the question as one of law is sensible, because an appellate court is in a better position to decide it correctly than is a trial court. *Villarreal,* 935 S.W.2d at 139 (citing *Miller v. Fenton,* 474 U.S. 104, 113–14, 106 S.Ct. 445, 451–52, 88 L.Ed.2d 405 (1985)).

8. *Villarreal,* 935 S.W.2d at 138 (citing *Calloway,* 743 S.W.2d at 651).

9. *Rakas,* 439 U.S. 128, 131 n. 1, 99 S.Ct. 421, 58 L.Ed.2d 387; *Wilson v. State,* 692 S.W.2d 661 (Tex.Crim.App.1984) (opinion on rehearing).

10. *Nite v. State,* 882 S.W.2d 587, 591 (Tex. App.-Houston [1st Dist.] 1994, no pet.) (citing *State v. Bassano,* 827 S.W.2d 557, 559–60 (Tex.App.-Corpus Christi 1992, pet. ref'd); *Stine v. State,* 787 S.W.2d 82, 85 (Tex.App.-Waco 1990, pet. ref'd); *Sutton v. State,* 711 S.W.2d 136, 138 (Tex.App.-Houston [14th Dist.] 1986, no pet.)).

11. 898 F.2d 1034 (5th Cir.1990).

In *United States v. Boruff*,[12] the defendant's girlfriend rented a car in her own name and turned it over to him.[13] The court noted that under the express terms of the rental agreement, the defendant's girlfriend was the only legal operator of the vehicle.[14] The court further stated that the girlfriend had no authority to give control of the car to the defendant.[15] The standard rental agreement signed by the girlfriend provided that only she would drive the car and that the car would not be used for an illegal purpose.[16] The defendant was aware of these restrictions when he took possession of the vehicle.[17] The court held that the defendant had no legitimate expectation of privacy in the rental car and thus could not challenge the search.[18] The *Boruff* and *Lee* opinions were issued within a few months of each other by different panels of the Fifth Circuit and do not seem to be reconciled by any later opinions.

Rovnak contends *Boruff* is distinguishable from the instant case because the defendant in *Boruff* was well aware of the express restrictions in the rental agreement when he took possession of the car and used it during a smuggling operation. Rovnak, however, admitted that he could not rent the car without a credit card, which Rovnak testified is the reason he asked Kidd to rent the car for him. Rovnak testified that he stood nearby while Kidd filled out the paperwork. Kidd wrote the word "NONE" in the box listing additional drivers. Rovnak also testified he watched Kidd hand the rental agent his credit card and watched the agent hand Kidd the keys. Rovnak's presence and observations during the transaction between Kidd and the rental agent leads to the inference that Rovnak knew of the restrictions contained in the agreement.

In *Nite v. State*,[19] a third party rented a vehicle and let the defendant drive it. The court held that the defendant had no legitimate expectation of privacy to challenge the search. The court stated that the Budget rental contract did not give the defendant permission to drive the car, and the lessee was not authorized to give the appellant permission to drive the car. The court found that the defendant did not have a legitimate expectation of privacy in his use of the car and, therefore, did not have standing to challenge the legality of the search of the rental car. In *Nite*, the rental agreement expressly provided that

> The Renter and the following validly licensed individuals with Renter's permission ("Authorized Drivers") may operate the Vehicle: Renter's spouse, employer or co-workers if engaged in business related activities with the Renter; persons parking the Vehicle at commercial establishments; or persons during an imminent life-threatening emergency situation. All other additional Authorized Drivers must appear at the time of rental and be named on the face of the Agreement. . . .

Rovnak contends that the present rental agreement contains no language on its face which prohibits a third party's use of the vehicle similar to the express language in the rental agreement in *Nite*. Here, the rental agreement stated in capital letters "ONLY DRIVERS AUTHORIZED BY BUDGET ARE PERMITTED TO OPERATE THE VEHICLE: RENTER IS RESPONSIBLE FOR ALL INJURY AND DAMAGE CAUSED BY UNAUTHORIZED DRIVERS." Rovnak contends this language is directed at limiting the lessor's liability for unauthorized drivers.

12. 909 F.2d 111 (5th Cir.1990).

13. *Id.* at 113–14.

14. *Id.* at 117.

15. *Id.*

16. *Id.* at 114.

17. *Id.*

18. *Id.* at 117.

19. 882 S.W.2d 587.

Assuming, arguendo, that Rovnak's argument is true, the agreement nevertheless clearly states that only those drivers authorized by Budget are permitted to operate the vehicle. Kidd acknowledged as much when he wrote "NONE" in the box authorizing additional drivers even though Kidd later turned the car over to Rovnak. Kidd himself represented that he was only giving permission for one driver, himself. At the bottom left corner of the rental agreement, the words "ALL INFORMATION ENTERED ON THIS PAGE IS CORRECT (INCLUDING OPTIONS ACCEPTED OR DECLINED BY ME), AND I AGREE TO ALL TERMS OF THIS AGREEMENT (PAGES 1 AND 2). There is an area with an "X" underneath these words which was not initialed, although Kidd's initials appear elsewhere on the agreement.[20] Page two of the agreement (if there was one) was not entered into evidence and is therefore not before us on appeal.

Rovnak contends he had the tacit approval of the rental car agency because the rental agent "knew everything that was occurring." Rovnak argues that since the rental agent saw him and Kidd together at the rental desk, the rental agent must have known Kidd was renting the vehicle for Rovnak's use. The rental agent could not have known that Rovnak was going to use the car when Kidd filled out his name as the renter, wrote "NONE" in the box authorizing additional drivers, and gave the rental agent his personal credit card to pay for the rental. Simply because two people stand together while one is renting a car does not automatically put the rental agent on notice that both persons will be driving the car. Rovnak testified that the rental agent gave Kidd the keys and then "after we took the car I took them and I took the car." Rovnak testified that after Kidd gave him the keys, Kidd got in his car, and he got in the rental car and drove

away. This testimony suggests that the rental agent did not see Kidd hand Rovnak the keys, and there is no evidence in the record that the rental agent saw Rovnak drive away in the rental car. Rovnak gave the following testimony during the motion to suppress in support of his contention that the rental employee "knew what was occurring."

Q: And this attendant, this Budget employee, saw both of you standing there?

A: Yes, sir.

Q: This [B]udget employee dealt with both of you?

A: Yes, sir.

Q: The paperwork that was filled out by Mr. Kidd, with you standing there, was done at the counter?

A: Yes, sir.

Q: With the employee of Budget there.

A: Yes, sir.

Q: So the three of you were there.

A: Yes, sir.

Q: And there was no question what was occurring?

A: Yes.

Q: The Budget employee knew what was occurring?

A: Yes, sir.

This testimony, when combined with Rovnak's testimony that "after we took the car I took them [the keys] and I took the car," and the circumstances surrounding the transaction does not affirmatively establish that the Budget employee knew Rovnak would be using the rental car or show the employee gave Rovnak approval to use the vehicle.

In *Reyes v. State*,[21] the defendant had a legitimate expectation of privacy when he gained permission not from the owner but from one authorized to give permission to

---

**20.** It is important to note that Kidd's initials do not appear in some other areas labeled with an "X" for either a signature or initial.

**21.** 910 S.W.2d 585 (Tex.App.-Amarillo 1995, pet. ref'd).

drive it.[22] In *United States v. Martinez*,[23] the defendant had a legitimate expectation of privacy in the car because the lawful owner of the car had given the defendant permission to use it. These cases are inapposite to the present case because they both involved permission from the owner or one authorized to give permission. Here, Budget did not give Rovnak either express authorization or tacit approval to use the vehicle.

In *United States v. Wellons*,[24] the Fourth Circuit Court of Appeals held that a driver *not* listed on the rental agreement as an authorized driver had no legitimate privacy interest in the car and that the search of which he complained did not violate his Fourth Amendment rights.[25] In *United States v. Roper*,[26] the Tenth Circuit Court of Appeals held that the defendant did not have standing to challenge the search of the vehicle he was driving at the time of the stop.[27] The defendant was not the owner, nor was he in lawful possession or custody of the vehicle.[28] The vehicle had been rented by a third party, and the defendant was not listed as an additional driver in the rental contract.[29]

In *United States v. Riazco*,[30] the Fifth Circuit Court of Appeals stated that, typically, a passenger without a possessory interest in an automobile lacks standing to complain of its search because his privacy expectation is not infringed.[31] The court further stated that there is no logical reason to adopt a different rule for a driver simply because he happens to be behind the wheel when the car is stopped.[32] Riazco neither owned nor rented the vehicle, and the rental agreement specifically stated that the car was to be driven only by persons authorized by the rental company. Riazco was not so authorized,[33] and he did not have the renter's permission to drive the car.[34] The court stated that its holding could be reconciled with the holding in *Lee*, where the party who had rented the car gave the defendants express permission to drive it.[35]

In *United States v. Muhammad*,[36] the Eighth Circuit Court of Appeals stated that a driver must have at least obtained permission from the lawful renter in order to establish a legitimate expectation of privacy. In *Muhammad*, the defendant failed to present any evidence that the renter had given him permission to use the car.[37] But the two cases the court in *Muhammad* relies upon in support its statement suggesting that permission from a lawful renter could be obtained did not involve a rental agreement, but rather involved private parties giving permission or not giving permission to operate their own personal vehicles.[38] Therefore, *Muhammad* is not persuasive authority for the instant case. *The key in the instant case is that Kidd, under the terms of the agreement with Budget, was not authorized to*

---

22. *Id.* at 589.

23. 808 F.2d 1050 (5th Cir.1987).

24. 32 F.3d 117 (4th Cir.1994).

25. *Id.* at 119.

26. 918 F.2d 885 (10th Cir.1990).

27. *Id.* at 887–88.

28. *Id.* at 888.

29. *Id.*

30. 91 F.3d 752 (5th Cir.1996).

31. *Id.* at 754 (citing *United States v. Roberson*, 6 F.3d 1088, 1091 (5th Cir.1993)).

32. *Riazco*, 91 F.3d at 755.

33. *Id.* at 754.

34. *Id.*

35. *Id.* at 755.

36. 58 F.3d 353 (8th Cir.1995).

37. *Id.* at 355.

38. *Id.* (citing *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir.1994); *United States v. Rose*, 731 F.2d 1337, 1343 (8th Cir.1984)).

*give another person consent to drive the car.*

Rovnak met his burden of showing he had an actual subjective expectation of privacy in the vehicle when he testified that he did not give Officer Beasley consent to search the vehicle. However, Rovnak did not meet the burden of showing that this subjective expectation was one society would recognize as objectively reasonable under the circumstances. There was no showing that Rovnak had a property or possessory interest in the vehicle when Kidd was not authorized to give Rovnak permission to use it. For the same reason, there was no showing Rovnak was legitimately in the place invaded, nor did Rovnak have the right to exclude others because Budget could have prevented him from using the vehicle. Rovnak's claim of privacy was not consistent with historical notions of privacy. In support of this contention, Rovnak cites this Court to *Chapa v. State.*[39] The court in *Chapa* found that a paying passenger of a taxicab had a legitimate expectation of privacy in the area under the front seat of the taxicab.[40] This case is distinguishable because Rovnak neither initially paid[41] for the rental car nor had permission to use it from one authorized to give permission (unlike the

taxicab driver in *Chapa*). In light of the foregoing discussion, and when viewing the evidence in the light most favorable to the trial court's ruling, we uphold the trial court's ruling on the motion to suppress.

■ Next, we will address both of Rovnak's contentions that the trial court erred in denying his motion to suppress because the warrantless search violated the Fourth and Fourteenth Amendments to the United States Constitution, Article I, § 9 of the Texas Constitution, and Article 38.23 of the Texas Code of Criminal Procedure.[42] Even if Rovnak had standing to challenge the search,[43] Rovnak gave Officer Beasley the limited consent to search his luggage on the back seat. While searching Rovnak's luggage, Officer Beasely smelled the odor of marihuana. This gave Officer Beasley probable cause to make a more extensive search of the vehicle.[44]

■■ A warrantless search is per se unreasonable unless it comes within one of the court-created exceptions to the general requirement that a search must be conducted under warrant.[45] In the case of a warrantless search, it is the State's burden to establish that an exception exists autho-

**39.** 729 S.W.2d 723, 725–26 n. 1 (Tex.Crim. App.1987).

**40.** *Id.* at 729.

**41.** There is no evidence in the record that Rovnak ever paid Kidd for his use of the rental vehicle.

**42.** Article 38.23(a) provides that "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.1999).

**43.** At least two courts have held that if a defendant does not have a legitimate expectation of privacy in the car searched, then the defendant also does not have a legitimate expectation of privacy in those items belong-

ing to him which he places in the car. In *United States v. Wellons,* 32 F.3d 117 (4th Cir.1994), the court held that "one who can assert no legitimate claim to the car he was driving cannot reasonably assert an expectation of privacy in a bag found in that automobile.... A person who cannot assert a legitimate claim to a vehicle cannot reasonably expect that the vehicle is a private repository for his personal effects, whether or not they are enclosed in some sort of container, such as a paper bag." *Id.* at 119 (citing *United States v. Hargrove,* 647 F.2d 411, 413 (4th Cir.1981)).

**44.** *See Longoria v. State,* 747 S.W.2d 50, 52 (Tex.App.-San Antonio 1988, no pet.) (citing *Aldridge v. State,* 482 S.W.2d 171, 174 (Tex. Crim.App.1972)).

**45.** *Reyes v. State,* 910 S.W.2d 585, 589 (Tex. App.-Amarillo 1995, pet. ref'd) (citing *State v. Phillips,* 752 S.W.2d 194, 196 (Tex.App.-Amarillo 1988, no pet.)).

rizing the search.[46] The Court of Criminal Appeals in *Heitman v. State* [47] stated that the Texas Constitution was not intended to "mirror that of the federal government," and that it reserved the right to interpret Article I, § 9 on independent state constitutional grounds.[48] Decisions subsequent to *Heitman* reveal that the Court of Criminal Appeals has departed from traditional Fourth Amendment analysis in only two instances.[49] In *Richardson v. State*,[50] a divided court differed from the decision of the United States Supreme Court in *Smith v. Maryland* and held that the use of a pen register may constitute a search under Article I, § 9.[51] In *Autran v. State*,[52] the court concluded Article I, § 9 provides a greater privacy interest in closed containers in vehicles than does the Fourth Amendment. Other than the *Richardson* case, we have not found, nor have we had cited to us, any cases where the Court of Criminal Appeals has analyzed Article I, § 9 differently from the analysis applied to the Fourth Amendment to the United States Constitution.[53]

One exception to the general rule that warrantless searches are per se unreasonable, recognized by both the federal and Texas courts, is the "automobile" exception.[54] Once probable cause to believe that an automobile contains evidence of a crime is established, officers may conduct an immediate warrantless search of an automobile.[55] In *Paulus v. State*,[56] the court stated that it is well settled that when the state relies on a consent to search, the burden of proof is on the prosecution to show by clear and convincing evidence that the consent was freely and voluntarily given.[57] The prosecution must show the consent given was positive and unequivocal, and there must not be duress or coercion, actual or implied. The burden is not discharged if the prosecution does not show more than an acquiescence to a claim of lawful authority.[58] Whether the consent relied upon is valid is determined from the totality of the circumstances.[59] Rovnak testified that he gave Officer Beasley consent to search his luggage on the back seat of the car, and there is no evidence in the record that his consent was not freely or voluntarily given.

Rovnak does not contend that Officer Beasley had no right to stop the vehicle he was driving for a traffic violation. After Rovnak gave Officer Beasley the limited consent to search his luggage, Officer Beasley smelled the odor of marihuana while in the back seat. Probable cause arose at that time for the officer to believe a crime had been or was being committed.[60] The ensuing search did not violate

46. *Reyes*, 910 S.W.2d at 590 (citing *Wilson v. State*, 621 S.W.2d 799 (Tex.Crim.App. [Panel Op.] 1981)).

47. 815 S.W.2d 681 (Tex.Crim.App.1991).

48. *Reyes*, 910 S.W.2d at 590 (citing *Heitman*, 815 S.W.2d at 690).

49. *Reyes*, 910 S.W.2d at 590.

50. 865 S.W.2d 944 (Tex.Crim.App.1993).

51. *Reyes*, 910 S.W.2d at 590 (citing *Richardson*, 865 S.W.2d at 953–54).

52. 887 S.W.2d 31 (Tex.Crim.App.1994).

53. *Reyes*, 910 S.W.2d at 590 (citing *Aitch v. State*, 879 S.W.2d 167, 172 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd)).

54. *Reyes*, 910 S.W.2d at 590.

55. *Amos v. State*, 819 S.W.2d 156, 161 (Tex. Crim.App.1991).

56. 633 S.W.2d 827, 850 (Tex.Crim.App. [Panel Op.] 1981).

57. *Longoria*, 747 S.W.2d at 52 (citing *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968)).

58. *Longoria*, 747 S.W.2d at 52 (citing *Allen v. State*, 487 S.W.2d 120 (Tex.Crim.App.1972)).

59. *Longoria*, 747 S.W.2d at 52 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)).

60. *Longoria*, 747 S.W.2d at 52 (citing *Brown v. State*, 481 S.W.2d 106 (Tex.Crim.App. 1972)).

either the United States Constitution or Article 1, section 9 of the Texas Constitution; therefore, the evidence was not admitted in violation of Article 38.23. The trial court did not err in denying the motion to suppress the evidence.

The judgment is affirmed.

Concurring by Justice GRANT.

I write this separate opinion to express my judicial observations about the exclusionary rule and its applicability to this case.

On December 21, 1911, the home of Fremont Weeks was unreasonably searched by officers of the government, and all of his books, letters, money, paper, notes, evidence of indebtedness, stock certificates, insurance policies, deeds, abstracts and other muniments of title, bonds, candies, clothes, and other property in the home were illegally seized in violation of the Fourth Amendment of the Constitution of the United States.

In the case of *Weeks v. United States*,[61] the Supreme Court established the exclusionary rule, which excluded evidence obtained in violation of the United States Constitution. All the rules of evidence are designed to facilitate the search for truth in a courtroom except the exclusionary rule. It is designed to control the conduct of law enforcement officers outside of the courtroom in order to enforce the protections guaranteed by the Fourth Amendment. Texas has long had this exclusion as a part of the Code of Criminal Procedure.

The exclusionary rule has cost the courts much criticism as being the enforcement of a technicality, although a mandate by the Constitution of the United States or of this State is not a technicality. Lakes of printer's ink have been used to write upon the application of this rule. But it should again be reviewed by the United States Supreme Court to determine if it is serving the purpose for which it was primarily designed.

Through the years, many exceptions have been grafted onto the construction of the Fourth Amendment, often causing the courts considerable effort to determine whether an invalid search and seizure had been made. In the present case, for example, one of the issues presented to this Court required a factual determination of a matter outside of the searching officer's knowledge dealing with whether the defendant had standing to object to a search. Information of any prior verbal consent from the owner of the vehicle was outside the officer's knowledge at the time of the search.

From my perception, the exclusionary rule is not working to prevent unreasonable searches of many innocent travelers on our highways, and when it is enforced on a person who is guilty of a criminal violation, then the result may be to let the criminal go free. Furthermore, the officer who conducted the unconstitutional search is not sanctioned. The rights of all citizens under the Fourth Amendment would be better protected if the application as to when to apply the Fourth Amendment were simplified. An officer cannot be expected to keep up with all the nuances and variations of its enforcement that continue to flow from the courts, and these rulings often leave ambiguities that split courts on whether there was a violation of the Fourth Amendment.

The Supreme Court of the United States in *Knowles v. Iowa*,[62] makes reference to a bright-line rule for field searches not incident to an arrest. Law enforcement needs bright-line rules for all areas of search and seizure, and officers who persist in violating this fundamental law should be subject to sanctions and, ultimately, to decertification if the officer persists in such conduct.

---

**61.** 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), *overruled, Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

**62.** 67 U.S.L.W. 4027, — U.S. ——, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998).

This would result in better enforcement of the Fourth Amendment than the exclusionary rule. If this is done, I would recommend the elimination of the exclusionary rule.