In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00139-CR


______________________________




EDWARD ARNOLD PRUNEDA, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 29175-B




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Ross



O P I N I O N



 Edward Arnold Pruneda was found guilty by a jury of possession of fifty pounds or
more but less than 2,000 pounds of marihuana and was sentenced to ten years'
imprisonment. He appeals, contending the trial court erred in denying his request for a jury
charge on racial profiling and in denying him standing to contest the search of the rental
vehicle he was driving.

 Pruneda was stopped on Interstate 20 in Gregg County at approximately 11:24 p.m.
for speeding. (1) The stop was made by State Trooper Bob Powell. Pruneda was driving a
minivan and was its only occupant. Powell testified that, after making the stop, he
approached the minivan on the passenger side and that he was using his flashlight. As
he approached the vehicle, he observed a large bundle under a blanket in the back, a
small black "carry-on bag" behind the driver's seat, and a radar detector on the dash. 
Powell asked Pruneda to step to the back of the vehicle. On meeting Pruneda at the back
of the vehicle, Powell identified himself, informed Pruneda of the reason for the stop, and
asked to see his driver's license. Powell testified that, as Pruneda was taking his driver's
license out of his wallet, "his hands [were] shaking tremendously" and that he was
"extremely nervous." Powell admitted on cross-examination that it was extremely cold that
evening, but testified that Pruneda was wearing a jacket and had just stepped out of the
vehicle. Powell asked Pruneda who owned the vehicle, and Pruneda informed him the
minivan was a rental vehicle. When Powell asked the name of the person who rented it,
Pruneda first answered a friend had rented it, but then quickly said his brother rented it for
him. Powell then returned to his patrol vehicle and ran a check on Pruneda's driver's
license and on the vehicle's registration tag. He also called for a back-up unit. After the
checks on the driver's license and the registration tag returned clear, Powell decided to
only give Pruneda a warning ticket for the speeding, but testified he did not feel the
investigation was over. Powell believed some type of criminal activity was occurring. He
based this belief on Pruneda's extreme nervousness, his inconsistent answers as to who
had rented the vehicle, and his concern about what was in the back of the vehicle. Powell
therefore returned to question Pruneda further concerning the rental agreement. 

 Pruneda appeared uncertain about who had rented the minivan and gave Powell
the name of "Earnest." Powell asked for and received the rental agreement and
discovered the vehicle was rented to Jimmy Hernandez. The rental agreement required
any additional drivers to be listed on the agreement, and those additional drivers must have
presented their driver's licenses to the rental store for approval to drive the vehicle. 
Earnest Hernandez was listed as an additional driver for this vehicle, but Pruneda was not. 

 At this point, Powell asked Pruneda for consent to search the vehicle. At first,
Pruneda answered it was up to the officer whether to search, but when Powell said it was
up to Pruneda whether he searched, Pruneda asked what would happen if he said no to
the search. Powell told Pruneda he would call for the drug dog. At this point, Pruneda
consented to the search of the vehicle. Powell found two boxes under the blanket in the
back of the vehicle. The crime laboratory confirmed the boxes contained, respectively, one
hundred and ninety-nine pounds of marihuana. 


 As his first point of error, Pruneda contends the trial court erred in denying his
request for a jury charge regarding racial profiling. According to Pruneda, his detention
became improper and beyond the scope of a traffic stop at the point Powell checked his
driver's license, found a clean record, and made the decision to issue Pruneda a warning
ticket. Pruneda contends the purpose of the stop ended at the time the decision had been
made to issue a warning ticket, and the questioning concerning the rental agreement and
all that followed was beyond the scope of the traffic stop. Pruneda maintains the further
investigation and detention was because he was Hispanic. 

 Under Texas law, a peace officer may not engage in racial profiling. Tex. Code
Crim. Proc. Ann. art. 2.131 (Vernon Supp. 2003). Racial profiling means a law
enforcement-initiated action was based on an individual's race, ethnicity, or national origin
rather than on the individual's behavior or on information identifying the individual as having
engaged in criminal activity. Tex. Code Crim. Proc. Ann. art. 3.05 (Vernon Supp. 2003). 
If evidence is illegally obtained, it may not be used against a defendant in a criminal trial. 
Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon Supp. 2003). Article 38.23(a) provides:

 No evidence obtained by an officer or other person in violation of any
provisions of the Constitution or laws of the State of Texas, or of the
Constitution or laws of the United States of America, shall be admitted in
evidence against the accused on the trial of any criminal case.


 In any case where the legal evidence raises an issue hereunder, the
jury shall be instructed that if it believes, or has a reasonable doubt, that the
evidence was obtained in violation of the provisions of this Article, then and
in such event, the jury shall disregard any such evidence so obtained.

But, a trial court is required to include an Article 38.23 instruction in the jury charge only
if there is a factual dispute as to how the evidence was obtained. Balentine v. State, 71
S.W.3d 763, 773 (Tex. Crim. App. 2002). 

 Pruneda contends the jury should have been given an instruction on racial profiling,
allowing them to disregard any evidence obtained after the time he purports the purpose
of the traffic stop had ended. However, there was no evidence presented at trial to show
the further detention of Pruneda was based on racial profiling. Powell testified he did not
engage in racial profiling. Instead, he said the detention was based on Pruneda's
nervous behavior, his inconsistencies concerning the rental agreement, and the bundle in
the back of the minivan. Powell testified that, in his experience, the circumstances
suggested criminal activity. There was no controverting evidence presented suggesting
the further detention was based on Pruneda's race. For example, Pruneda offered no
statistical data that the police department, or that Powell in particular, had engaged in racial
profiling in the past. Further, nowhere in Pruneda's testimony did he indicate he was
singled out because of his race. The only mention of racial profiling was during Powell's
cross-examination, where he adamantly denied engaging in racial profiling:

 [Defense counsel]: . . . . The decision to keep him from beyond - - the
decision that instead of issuing a warning ticket, you're going to call for the
canine unit, call for the backup, and hold him there further, was that, in any
way, based on the fact that he's Hispanic and out of state?


 [Powell]: No, sir. I stop a lot of people on the side of the road. I had
no idea who he was when I stop [sic] the vehicle. At the time I stopped the
vehicle, whether or not he's Hispanic, white, black, Asian, it doesn't matter
to me. If I feel like everything's okay, I will let them go. But under the
circumstances, and under my past experience of working as a Trooper on
the highways, that's the reason why I kept him. I thought there was enough
[probable cause] to . . . ask him for his consent to search the vehicle.


Because there was no factual dispute about whether the evidence was obtained as a result
of racial profiling, the trial court did not err in refusing an instruction to the jury on racial
profiling. Pruneda's first point of error is overruled. 

 As his second point, Pruneda contends the trial court erred in denying him standing
to contest the search. An accused individual has standing under either the Fourth
Amendment to the United States Constitution, or under Article I, Section 9 of the Texas
Constitution, to challenge admission of evidence obtained by governmental intrusion only
if he or she had a legitimate expectation of privacy in the place invaded. Villarreal v. State,
935 S.W.2d 134, 138 (Tex. Crim. App. 1996); see U.S. Const. amend. IV; Tex. Const.
art. I, § 9. The purpose of both constitutional provisions is to safeguard an individual's
legitimate expectation of privacy from unreasonable governmental intrusions. Villarreal,
935 S.W.2d at 138. To establish an expectation of privacy, the accused must show (a)
that by his or her conduct, he or she exhibited an actual subjective expectation of privacy,
i.e., a genuine intention to preserve something as private; and (b) that circumstances
existed under which society was prepared to recognize his or her subjective expectation
as objectively reasonable. Id. A person driving a rental vehicle does not have standing to challenge a search of
the vehicle if his or her driving of the vehicle is prohibited by the vehicle rental agreement,
even if such person had the permission of the person who rented the vehicle. Freeman
v. State, 62 S.W.3d 883, 889 (Tex. App.-Texarkana 2001, pet. ref'd); Rovnak v. State, 990
S.W.2d 863, 871 (Tex. App.-Texarkana 1999, pet. ref'd). While a third party driving a
rental vehicle may be able to show that, by his or her conduct, he or she exhibited an
actual subjective expectation of privacy, that third party cannot meet the burden of showing
his or her subjective expectation was one society would recognize as objectively
reasonable under the circumstances because that party has no property or possessory
interest in the vehicle. See Rovnak, 990 S.W.2d at 871.

 Pruneda testified he had permission from Hernandez, the person who rented the
vehicle. Nonetheless, Pruneda was prohibited by the terms of the rental agreement from
driving the vehicle. Under the terms of the agreement, additional drivers were required to
be listed on the rental agreement and to present their driver's licenses to the rental store
for approval. Because Pruneda was not authorized under the terms of the rental
agreement to drive this vehicle, he lacked standing to challenge the search of the vehicle. 
We overrule his second point of error. 

 Pruneda additionally argues in his brief that, "Standing in the vehicle aside,
Appellant had standing to contest the detention of his person and statements drawn from
him." We agree that a person may have standing to contest the detention of his or her
person even if he or she does not have standing to contest the search of a rental vehicle
such person was driving. See Freeman, 62 S.W.3d at 889. However, Pruneda predicated
his contention the stop was illegal on a finding of racial profiling. As addressed above, we
have found no evidence of racial profiling. Accordingly, Pruneda's alternative contention
is likewise overruled. 

 We affirm the judgment.



 Donald R. Ross

 Justice


 

Date Submitted: March 20, 2003

Date Decided: April 25, 2003


Publish

1. Pruneda was traveling seventy-three miles per hour in a sixty-five mile-per-hour
zone.


Exception Locked="false" Priority="62" SemiHidden="false"
 UnhideWhenUsed="false" Name="Light Grid Accent 5"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00082-CR

                                                ______________________________

 

 

                                LANNY DEAN CAMPBELL,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 196th
Judicial District Court

                                                              Hunt County, Texas

                                                            Trial
Court No. 26517

 

                                                           
                                       

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                      MEMORANDUM OPINION

 

            There was no
dispute that Lanny Dean Campbell had shot and killed James Michael
McKinnis.  After a jury convicted
Campbell of murder, he was sentenced to thirty-five years imprisonment.  On appeal, Campbell argues that there was
error in the jurys punishment charge because the trial court failed to sua
sponte include a definition of the term preponderance of the evidence as it
related to the issue of sudden passion which he had raised.  Campbell also complains that his counsel
rendered ineffective assistance when he elicited testimony regarding Campbells
invocation of his right to counsel.  We
find that it was no error to have omitted a definition of preponderance of the
evidence when there was no request for its inclusion and further hold that
Campbells counsel did not render ineffective assistance.  

I.         Campbell Cannot Show that Egregious Harm
Resulted from the Courts Charge 

 

            At the
punishment stage of a trial, the defendant may raise the issue as to whether he
caused the death under the immediate influence of sudden passion arising from
adequate cause.  Tex. Penal Code Ann. § 19.02(d) (West 2011).  Campbell raised and obtained an instruction
on the issue of sudden passion during punishment.  If the defendant proves the issue [of sudden
passion] in the affirmative by a preponderance of the evidence, the offense is
a felony of the second degree.  Id.  Although
Campbell failed to make a specific request that the definition of preponderance
of the evidence be included in the jury charge, Campbell contends that the
trial court erred in failing to make a sua sponte inclusion of a definition of
that term in the charge given to the jury in the punishment phase of the
trial.  

            Our
review of alleged error in this jury charge involves a two-step process.  Ngo v.
State, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); see also Sakil v. State, 287 S.W.3d 23,
2526 (Tex. Crim. App. 2009).  Initially,
we determine whether error occurred, and then evaluate whether sufficient harm
resulted from the error to require reversal. 
Abdnor, 871 S.W.2d at 73132.  

            A trial
court must submit a charge setting forth the law applicable to the case.  Tex.
Code Crim. Proc. Ann. art. 36.14 (West 2007).  The purpose of the jury charge . . . is to
inform the jury of the applicable law and guide them in its application to the
case.  Delgado v. State, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007).  It is not the function of the charge merely
to avoid misleading or confusing the jury:  it is the function of the charge to lead and
prevent confusion.  Id.  A trial judge

must
ensure that all of the law applicable to the criminal offense that is set out
in the indictment or information is incorporated into the jury charge as well
as the general admonishments, including reference to the presumption of
innocence, proof beyond a reasonable doubt, unanimity of the verdict, and so
forth.  Here he has a sua sponte dutya
duty to act without any request or objections from the parties.

 

Id.  However, it does not inevitably follow that [the
trial judge] has a similar sua sponte duty to instruct the jury on all
potential defensive issues, lesser-included offenses, or evidentiary issues,
which frequently depend upon trial strategy and tactics.  Id.  Yet, when a defensive issue on sudden passion
is raised and included in the charge, we believe it advisable for the court to
include an instruction on the burden of proof at that time.  See id.
at 251 (when limiting instruction for extraneous offense evidence is
properly requested during the guilt/innocence phase and the trial court instructs
jury not to consider extraneous offense evidence admitted for limited purpose
unless it believes beyond reasonable doubt that defendant committed extraneous
offense, court must define burden of proof); Huizar v. State, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000) (failure
to sua sponte instruct jury on proper burden of proof for extraneous offenses
during punishment phase of trial was erroneous); Bolden v. State, 73 S.W.3d 428, 431 (Tex. App.Houston [1st Dist.]
2002, pet. refd). 

            Campbell did
not object to the jury charge.  Because Campbell
did not raise his complaint at trial, we must first decide whether the trial
court committed error in not including a definition of preponderance of the
evidence sua sponte.  This question is
apparently unique in Texas.

            At one point
in time, Texas law required that all criminal jury charges contain a specific
definition of the term beyond a reasonable doubt (this definition as
prescribed by the Texas Court of Criminal Appeals containing within itself
three definitions) and that a failure to include it when requested was
reversible error.  Geesa v. State, 820 S.W.2d
154 (Tex. Crim. App. 1991).  The
next step was a ruling that a trial courts failure to include the definition
sua sponte was automatically reversible error.  Reyes v. State, 938 S.W.2d 718 (Tex. Crim. App. 1996).  Thereafter, taking a complete about-face, the
Texas Court of Criminal Appeals determined that the reasoning in Geesa
and Reyes ignored over a hundred years precedent, was quite seriously
flawed, and the reasonable doubt definition in Geesa was confusing and
redundant, stating, We find that the better practice is to give no definition
of reasonable doubt at all to the jury. Paulson v. State, 28 S.W.3d 570, 573 (Tex. Crim.
App. 2000).

            The term preponderance
of the evidence does not seem to suffer from the difficulty in definition that
is found in defining beyond a reasonable doubt.  Both civilly and criminally, the courts in
Texas have found that some variation of the phrase greater weight of the
credible evidence has sufficed as a definition for many years.  Natl
Bank of Garland v. Gough, 197 S.W. 1119, 1121 (Tex. Civ. App. 1917); Allen v. State, 841 S.W.2d 7, 11 (Tex.
Crim. App. 1992) (citing Superior Lloyds
of Am. v. Foxworth, 178 S.W.2d 724 (Tex. Civ. App.Amarillo 1944, writ refd
w.o.m.)).

            Even though
a generally accepted definition is available, the definition of preponderance
of the evidence seems a common-sense one which could easily be understood by a
jury.  The phrase itself does not
incorporate any arcane words or what might be called legalese.  For the most part, one could almost say that preponderance
of the evidence means exactly what it says and needs little further
definition.  Certainly, a juror can
determine it to be a much less onerous burden than beyond a reasonable doubt,
irrespective of whether a definition was provided the jury.  Accordingly, although we have previously
noted that it is the better practice to include a definition of preponderance
of the evidence and a definition should certainly be included upon the request
of a defendant, where appropriate, we cannot say that it was error for the
trial court to have not included such a definition in the jury charge.

            Even if
there would be error for the trial court to have failed to make a sua sponte
insertion of the definition of preponderance of the evidence, the error which
would have resulted would not have been so egregious or created such harm that Campbell
did not have a fair and impartial trial. Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on rehg), superseded on other grounds by rule as
stated in Rodriguez v. State, 758 S.W.2d 787 (Tex. Crim. App. 1988); Allen v. State, 253 S.W.3d 260, 264
(Tex. Crim. App. 2008); Boones v. State,
170 S.W.3d 653, 660 (Tex. App.Texarkana 2005, no pet.).  Egregious harm occurs where an error affects
the very basis of a case, deprives the defendant of a valuable right, vitally
affects a defensive theory, or makes the case for conviction or punishment
clearly and significantly more persuasive.  Boones,
170 S.W.3d at 660 (citing Saunders v.
State, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991)).  

            Egregious
harm is a difficult standard to meet and must be determined on a case-by-case
basis.  Ellison v. State, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002).  We consider the charge itself, the state of
the evidence (including contested issues and the weight of the probative
evidence), arguments of counsel, and the record as a whole in addressing harm.  Hutch v.
State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

            The jury
charge itself required the jury to determine by a preponderance of the
evidence whether or not [Campbell] caused the death under the immediate
influence of sudden passion arising from an adequate cause.  The proper definitions of sudden passion and
adequate cause as defined by statute were provided, and the application
paragraph of the charge was proper.  

            During the
arguments of counsel, the State erroneously told the jury that it was Campbells
burden to prove sudden passion beyond the preponderance of the evidence.  However, Campbells counsel emphasized the
proper standard:

Now, I do
want to address this special issue on page 5. 
And the first thing that I would like to make sure you
understandbecause this is different, and its not explained to you, I dont
believe, anywhere else in here.  It says,
You must determine by a preponderance of the evidence. 

 

            . . . the burden of proof is by a
preponderance of the evidence and that means that you find that the evidence
that you received proved a little bit more one way or the other, not beyond a
reasonable doubt, not clear and convincing, but preponderance of the evidence. 

 

            Now, Mr. Lilley misspoke when he
said beyond a preponderance of the evidence, and that would be easy to do
because we have been talking about beyond a reasonable doubt all week, but look
at the words here by a preponderance of the evidence.

 

            With regard
to the record, Campbell testified that McKinnis shoved him in his living room
during an argument, throwing him down on the ground into [a] toolbox.  Campbell became scared and went to his
bedroom to retrieve a gun.  Campbell
testified that he took a shell out of [the gun] to make sure it had one in the
chamber, and I fired one through the floor as a warning to him to get the hell
out of my house.  Campbell stated that
when he went back to the living room, McKinnis started coming towards me, and
I told him to leave one more time.  And
he kept coming and I shot him in the foot. 
And then he started reaching for me and coming again, and I raised it
higher and shot, and he still was reaching for my gun, and I shot again.  

            The jury
also heard a substantially different version of events from that to which
Campbell testified.  Campbells son,
Jordan, testified that Campbell was the first aggressor.  According to Jordan, McKinnis was asking
Campbell why he was being instructed to leave. 
In response, Jordan testified my dad pushed him and [McKinnis] said,
Well, we can take this outside like real men if you want to, but I dont want
to.  My dad said I can handle this.  Jordan told the jury that he never saw
McKinnis push Campbell.  Jordan
remembered McKinnis heading down the steps and I was behind him. . . I
remember. . . my dad opening the door and I remember gunshots.    McKinnis body was found in the front
yard.  

            Jordans
version of events was confirmed by eyewitness Brian Stanley.  Stanley said that Campbell and McKinnis
engaged in an argument, McKinnis did not shove Campbell, and McKinnis left the
argument by exiting through the door. 
Stanley expounded further, saying that Campbell came outside and
started shooting at McKinnis.  

            By rejecting
Campbells self-defense issue raised during the guilt/innocence phase, the jury
indicated its disbelief in Campbells story.  
In line with its previous rejection of self-defense, the jury could have
decided that McKinnis did not provoke Campbell in a manner that would commonly
produce a degree of anger, rage, resentment, or terror in a person of ordinary
temper, sufficient to render them capable of cool reflection. 

            Considering
the jury charge, arguments of counsel, the record in this case, and Campbells
thirty-five-year sentence, we hold that Campbell has failed to show that he was
egregiously harmed as a result of the alleged jury charge error. 

            We overrule
this point of error. 

 

II.       Campbell Received Effective Assistance of
Counsel 

 

            Next, Campbell argues,
without specific citation to the record, that his counsel improperly commented
before the jury on Campbells invocation of his constitutional right to an
attorney prior to interrogation. 
Campbell contends this conduct resulted in ineffective assistance. 

            We begin our
analysis with the rule that any allegation of ineffectiveness of counsel must
be firmly founded in the record.  Goodspeed v. State, 187 S.W.3d 390, 392
(Tex. Crim. App. 2005); Thompson v. State,
9 S.W.3d 808, 813 (Tex. Crim. App. 1999); Wallace
v. State, 75 S.W.3d 576, 589 (Tex. App.Texarkana 2002), affd, 106 S.W.3d 103 (Tex. Crim. App.
2003).  From the record received by this
Court, which does not contain counsels reasons for mentioning Campbells right
to seek an attorney prior to interrogation, Campbell bears the burden of
proving that counsel was ineffective by a preponderance of the evidence.  Goodspeed,
187 S.W.3d at 392; Thompson, 9 S.W.3d
at 813; Cannon v. State, 668 S.W.2d
401, 403 (Tex. Crim. App. 1984).  Rarely
will a reviewing court be provided the opportunity to make its determination on
direct appeal with a record capable of providing an evaluation of the merits of
the claim involving ineffective assistance claims.  Thompson,
9 S.W.3d at 813.  In the majority of
instances, the record on direct appeal is simply undeveloped and cannot
adequately reflect the reasoning of trial counsel.  Id. at
81314.  As demonstrated below, this is
such a case. 

            We
apply the two-pronged Strickland test
handed down by the United States Supreme Court to determine whether Campbell received
ineffective assistance of counsel.  Strickland v. Washington, 466 U.S. 668 (1984).
 Failure to satisfy either prong of the Strickland test is fatal.  Ex parte
Martinez, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006).  

            First, Campbell
must show that counsels performance fell below an objective standard of
reasonableness in light of prevailing professional norms. Strickland, 466 U.S. at 68788. 
There is a strong presumption that counsels conduct fell within the
wide range of reasonable professional assistance and that the challenged action
could be considered sound trial strategy. 
Id. at 689; Tong v. State, 25 S.W.3d 707, 712 (Tex.
Crim. App. 2000).  Therefore, we will not
second-guess the strategy of Campbells counsel at trial through
hindsight.  Blott v. State, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); Hall v. State, 161 S.W.3d 142, 152 (Tex.
App.Texarkana 2005, pet. refd).

            Here, the
States brief points us to two places in the record.  Campbells counsel was cross-examining
investigator Roger Seals, when counsel asked, Isnt it true, Mr. Seals, that
when asked to talk to the law enforcement authorities, my client invoked his
constitutional right and asked to have his attorney?  Seals replied that Campbell had invoked this
right and answered no when asked if he had any problem with the
Constitution.  Later in the trial,
counsel confirmed from Lieutenant Tommy Grandfield that Campbell did not have
an attorney at the time he was interviewed and gave a statement.  

            One
of the arguments counsel made to the jury involved the possibility of an
illegal search.  Neither Campbell nor his
wife (nor any other person authorized to do so) had provided consent to  search their home, and Grandfield testified
that a search warrant was then required.  
Counsel argued,

We
heard testimony from different people, especially including Mr. Haines, that
Investigator Haines went through the premises when he arrives somewhere around
a quarter of 2:00 in the morning.  We
know according to this testimony that prior to that, and at the same time,
there was Investigator Peters.  There was
Investigator Snead.  There were two other
informed [sic] officers.  There was even
Wills Point police officers there, according to Mr. Haines.  

            And these people were not going in
the house to brew a pot of coffee.  They
were going into search.  They had no authority
to go into search.  Because this search
warrant, if you read it, does not say that you can recover the stuff that you
have already found.  It says now, at 4:17
a.m., law enforcement authority, you have the right to now go and search . . .

            And the Court tells you if you, the
jury, believe or have reasonable doubt that the evidence was obtained in
violation of the provisions of Article, referring back to the Constitution and
the laws of Texas, Constitution and the laws of the United States of America.  And then in such an event, you shall disregard
any evidence thats obtained. 

 

            Haines had
testified at approximately 4:30 a.m. he was notified that the search warrant
had been signed and to begin processing the crime scene.  It could have been counsels trial strategy
to hint to the jury that the officers were not following the constitutional
playbook.[1]
Counsel could have believed that the jury might think if the investigators had
ignored Campbells right to counsel, perhaps they also obtained evidence in
violation of the Constitution during the search.  Counsel also could have sought to challenge
the credibility of the officers and investigators through this line of
questioning.  Absent a record explaining
counsels reasoning, we will not second-guess the strategy of Campbells
counsel at trial through hindsight.  

            The second Strickland prejudice prong requires a
showing that but for counsels unprofessional error, there is a reasonable
probability that the result of the proceeding would have been different.  Strickland,
466 U.S. at 68788.  A reasonable
probability is a probability sufficient to undermine confidence in the
outcome, meaning that counsels errors were so serious as to deprive the
defendant of a fair trial, a trial whose result is reliable.  Smith,
286 S.W.3d at 340. 

            With respect
to this second prong, Campbell notes that the jury was interested in Campbells
statement obtained during interrogation, although it was not entered into
evidence.   He argues that because his
invocation of his right to counsel was brought to the jurys attention, the
jury was able to infer guilt and the trial counsel severely diminished Mr.
Campbells argument of self-defense. 
However, Grandfield admitted that the substance of the statement made by
Campbell, at a time when he did not have an attorney present, included a
version of events that he had been pushed down by James Michael McKinnis.  This testimony substantiated the self-defense
claim.  Thus, the jurys request for the
substance of the statement does not establish egregious harm and dispels the
theory that counsels mention of Campbells invocation in this case led to an
inference of guilt.  Additionally,
considering Jordans and Stanleys testimony, we find that Campbell has failed
to demonstrate that the result of the proceeding would have been different
absent counsels alleged error. 

            We overrule
Campbells last point of error. 

 

III.      Conclusion 

 

            We affirm the judgment of the
trial court. 

 

 

 

                                                                                    Bailey
C. Moseley

                                                                                    Justice

Date Submitted:          December
19, 2011

Date Decided:             January
6, 2012

 

Do Not Publish           

 

 











[1]Campbell
cites to cases holding that ones invocation of the right to counsel is
inadmissible as evidence of guilt.  Hardie v. State, 807 S.W.2d 319, 322
(Tex. Crim. App. 1991).