**John Stephen STINE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–88–101–CR.**

Court of Appeals of Texas,
Waco.

Feb. 8, 1990.

Rehearing Denied March 8, 1990.

Discretionary Review Refused
June 27, 1990.

Joe Messa, Williams & Smith, Houston, for appellant.

Dan V. Dent, Crim. Dist. Atty., Hillsboro, for appellee.

## OPINION

THOMAS, Chief Justice.

A jury found Appellant guilty of the murder of Raymond Krieger and assessed his punishment at fifty years in prison and a $10,000 fine. *See* TEX.PENAL CODE ANN. § 19.02 (Vernon 1989). Points on appeal relate to the denial of a motion to suppress evidence seized in a warrantless search of an automobile, the failure to instruct the jury on the lesser included offense of voluntary manslaughter, and the admission of evidence of prior acts of misconduct and an extraneous offense. The judgment will be affirmed.

At 7:00 a.m. on June 14, 1987, Krieger was found lying near a road, badly beaten, and was hospitalized with serious injuries. He said he had been beaten with a baseball bat. Hill County Sheriff's officers soon received information that two men accompanied by two women had been observed the previous evening forcing Krieger into a blue and brown station wagon. Around 10:00 a.m. the officers were informed that two women were seen in the station wagon in the Live Oaks Estates Subdivision near Lake Whitney. They located the car, stopped it, and apprehended Evelyn Liehsel and Lauralyn Jackson. Approximately one hour later, an officer returned to the station wagon, which had been left parked in a private driveway near where it had been stopped, and retrieved a bloody baseball bat and towel from the back of the vehicle. Appellant was arrested around noon that same day. Krieger died from his injuries during the early morning hours of June 15. The bat and towel were introduced into evidence at Appellant's trial.

Appellant tried to suppress the baseball bat and towel as evidence. At the pretrial suppression hearing, Deputy West testified that he saw a bloody towel lying behind the driver's seat of the station wagon after it was stopped. Although he was investigating an assault, West claimed that the towel did not have any particular significance to him at the time he first saw it. Deputy Rizo also saw a bloody bat and towel in the back of the station wagon after it was stopped. However, neither officer seized the bat or towel when they arrested Liehsel and Jackson. Instead, they left the station wagon unattended and apparently unlocked in a nearby private driveway. West admitted that no inventory was done on the car when the women were arrested.

While interrogating Liehsel at the police station, West discovered that a baseball bat

had been used to beat Krieger. Rizo overheard that discussion and told West that he had noticed a bat in the back of the station wagon. Approximately one hour after the apprehension of Liehsel and Jackson, Rizo returned to the car and retrieved the bat and towel. He again left the car unattended in the private driveway.

Appellant's first point is that the court erred when it denied his motion to suppress. He contends the bat and towel were obtained as a result of an unreasonable search and seizure. The State argues that Appellant could not complain about the search and seizure because he did not have a legitimate expectation of privacy in the station wagon, which was owned by a third party.

■ Fourth Amendment rights are personal and cannot be asserted vicariously. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978). Therefore, a person must have a legitimate expectation of privacy in the area searched before he can complain about the violation of the Fourth Amendment. *Id.* 99 S.Ct. at 433. Although the expectation of privacy in a car is more limited than the expectation of privacy in a home, Fourth Amendment rights are not lost when a person enters a car. *Howard v. State,* 599 S.W.2d 597, 600 (Tex.Crim.App. [Panel Op.] 1979). The Fourth Amendment protects people, not places. *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 2481, 53 L.Ed.2d 538 (1977). Thus, when determining whether there is an expectation of privacy, property rights, although relevant, are not the only factors to be considered. *Bass v. State,* 713 S.W.2d 782, 786 (Tex.App.—Houston [14th Dist.] 1986, no pet.).

■ Timothy Lovely, Appellant's employer, testified at the suppression hearing that the owner of the station wagon had brought the car to his business for repairs, and had authorized him or his employees to test-drive the vehicle after it was repaired. Lovely said that he had given Appellant permission to drive the car during the weekend the bat and towel were seized from the vehicle. Appellant, who had permissive authority to drive the station wag-

on when the seizure occurred, had a reasonable expectation of privacy in the vehicle. *See Howard,* 599 S.W.2d at 605 (holding that a defendant who borrowed a car had "standing" to complain about the admission of evidence obtained in a warrantless search of the vehicle).

Warrantless searches are per se unreasonable under the Fourth Amendment. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). Exceptions to this rule include: (1) a search incident to a valid arrest; (2) the "automobile exception"; (3) an inventory search; and (4) the "plain view exception." However, these exceptions are "jealously and carefully drawn." *Jones v. United States,* 357 U.S. 493, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514 (1958). The burden is on the government to show that a warrantless search and seizure falls within one of the exceptions, and that the exigency of the circumstances made the seizure without a warrant imperative. *McDonald v. United States,* 335 U.S. 451, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948). Evidence obtained in violation of the constitution must be suppressed, and the court has no discretion in the matter. TEX.CODE CRIM.PROC. ANN. art. 38.23(a) (Vernon Supp.1990); *Polk v. State,* 738 S.W.2d 274, 276 (Tex. Crim.App.1987).

■ A well-known exception to the general rule that a warrant must be obtained before a search is conducted is a search incident to a valid arrest. *See e.g., Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). A search is incident to an arrest only if it is "substantially contemporaneous" with the arrest and is confined to the area within immediate control of the person arrested. *Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409 (1970). Furthermore, once a person is arrested and in custody, searching his car at another location without a warrant is not a search incident to the arrest. *Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964). Because the baseball bat and towel were removed from the car approximately an hour after Liehsel and

Jackson were arrested and in custody at the station, the search was not "substantially contemporaneous" with their arrest, and the items seized were not then within their immediate control. Therefore, the search cannot be justified as a search incident to an arrest.

■ The "automobile exception," which allows police to make a warrantless search of an automobile stopped on a road whenever they have probable cause to do so, is another exception to the warrant requirement. *See e.g., Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The United States Supreme Court has held that an *immediate* search based on probable cause is constitutionally permissible because a "car is moveable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained." *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). Furthermore, "if an effective search is to be made at any time, either the search must be made *immediately* without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search." *Id.* 90 S.Ct. at 1981 (emphasis added). However, if a car may be searched where it is stopped, it may also be seized and taken to the station for the warrantless search. *See id.* Warrantless searches of cars based on probable cause may be upheld only if there are exigent circumstances which make obtaining a warrant impracticable. *Gauldin v. State,* 683 S.W.2d 411, 414 (Tex.Crim.App.1984).

■ Although the officers had probable cause to search the station wagon when they stopped it, they failed to conduct an *immediate* search or to seize the car and take it to the station to be searched. Instead, they parked it in a private driveway and left it unattended until they returned without a warrant approximately an hour later to seize the bat and towel. Although Appellant had not been apprehended at the time the evidence was seized, this alone did not constitute exigent circumstances which made obtaining a warrant impracticable. The officers' delay in searching the car and

their failure to exercise control over it clearly indicated that exigent circumstances did not then exist and that they could have obtained a search warrant. The automobile exception does not apply to this case.

A third exception to the warrant requirement is an "inventory search" of a vehicle lawfully impounded. *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). The rationale behind this exception is to protect the belongings in the vehicle from theft, to protect the police department from liability for the loss of the belongings, and to enable police to respond to theft or vandalism. *Id.* 96 S.Ct. at 3097. Here, Deputy West admitted that no "inventory" of the vehicle was done when Liehsel and Jackson were arrested. Furthermore, the officers did not seize the station wagon when they apprehended Liehsel and Jackson or when they took the bat and towel. The inventory exception does not apply because the record is devoid of any evidence that the officers conducted a lawful inventory search. *See Gauldin,* 683 S.W.2d at 415.

■ Finally, evidence in "plain view" which an officer inadvertently discovers may be seized without a warrant. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). However, plain view alone never justifies a warrantless seizure of evidence. *Id.* 91 S.Ct. at 2039. The criteria for a plain-view seizure include: (1) the officer had a legitimate reason to be where he was; (2) the discovery of the item in plain view was inadvertent; and (3) the officer had probable cause to believe that the item in plain view was evidence. *Howard,* 599 S.W.2d at 603 (on rehearing). Assuming that the criteria are met, officers may seize the item immediately. *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502 (1983). However, "where the police know in advance the location of the evidence and intend to seize it ... the requirement of a warrant to seize imposes no inconvenience whatever." *Coolidge,* 91 S.Ct. at 2040. Furthermore, to extend the scope of a warrantless search "to the seizure of objects—

not contraband nor stolen nor dangerous in themselves—which the police know in advance they will find in plain view and intend to seize, would fly in the face of the basic rule that no amount of probable cause can justify a warrantless seizure." *Id.* at 2041.

Although West and Rizo inadvertently discovered the bat and towel while lawfully apprehending Liehsel and Jackson and had probable cause to believe the items were evidence of a crime, they did not seize them at that time. However, when Rizo returned an hour later to seize the bat and towel without a warrant, he knew the location of the car, knew the bat and towel were in it, and intended to seize the items. Under the circumstances, obtaining a warrant would not have imposed an inconvenience on the officers. *See id.* at 2040. To justify a warrantless search in this type of situation would "fly in the face of the basic rule that no amount of probable cause can justify a warrantless seizure." *See id.* at 2041.

█ Because the facts will not fit within any of the narrow exceptions to the general rule requiring a warrant before a search is conducted, the baseball bat and towel were illegally seized and should have been suppressed as evidence. *See Polk,* 738 S.W.2d at 276. However, the critical inquiry is whether this court can determine beyond a reasonable doubt that the jury's viewing of the murder weapon and a towel with Krieger's blood on it did not contribute to Appellant's conviction or punishment. *See* TEX.R.APP.P. 81(b)(2); *Smith v. State,* 542 S.W.2d 420, 422 (Tex.Crim. App.1976).

The State introduced into evidence numerous, color photographs of Krieger's battered body. These photographs, which were taken after Krieger's death, graphically and grotesquely depicted the nature and severity of his injuries. Dr. Weiner, a pathologist, testified that Krieger had sustained injuries "to all aspects of his body," which included massive injuries to his face, cheek, forehead, eyes, as well as fractured ribs, a punctured lung, brain damage, and bleeding into his chest cavity. His expert opinion was that the injuries were inflicted by a "blunt" object and were consistent with injuries inflicted by a baseball bat.

Lauralyn Jackson recounted the sequence of events which culminated in Krieger's death. She saw Appellant, who was holding a baseball bat, and Jerry Miller drag Krieger out of his house with a towel wrapped around his waist. This was the bloody towel later seized from the station wagon. She said that Krieger was "horrible looking" because he had already been beaten "so bad with that baseball bat." Jackson claimed that she heard Krieger being beaten with the bat at the lake and in the station wagon. Krieger told the person who found him by the side of the road that he had been beaten with a baseball bat.

The evidence was overwhelming that Krieger sustained massive injuries which resulted in his death; that his injuries were inflicted by a baseball bat; and that Appellant and Miller were responsible for inflicting those injuries over a period of several hours. Jackson's and the pathologist's testimony, along with the photographs of Krieger's body and of the lake house where he had been tied to a chair, established the savage nature of the attack.

Assuming that the bat and towel had not been admitted as exhibits, the jury still had ample evidence before it which would have easily justified Appellant's conviction and fifty-year sentence. Moreover, the photographs of Krieger's injuries and Jackson's testimony about Appellant's use of a baseball bat to inflict the injuries in a calculated, cruel, and premeditated manner removed whatever prejudice might have otherwise resulted from the bat and towel being erroneously admitted as evidence. To hold otherwise would denigrate the jury's common sense and approach incredulity. Although the court erred when it denied the motion to suppress, the error was harmless because the record reflects beyond a reasonable doubt that it did not contribute to Appellant's conviction or punishment. Point one is overruled.

█ Appellant requested an instruction on the lesser-included offense of voluntary

manslaughter, and objected to the charge because it failed to include the instruction. He contends in point two that the failure to charge the jury on voluntary manslaughter was error.

A charge on the lesser-included offense of voluntary manslaughter is not appropriate unless there is evidence that the defendant acted "under the immediate influence of sudden passion arising from adequate cause." *Marquez v. State,* 725 S.W.2d 217, 223–24 (Tex.Crim.App.1987); *see* TEX.PENAL CODE ANN. § 19.04(a) (Vernon 1989). "Sudden passion" is defined as "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." TEX.PENAL CODE ANN. § 19.04(b) (Vernon 1989). "Adequate cause" means a "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* at § 19.04(c).

Appellant did not act in sudden passion, but acted in a calculated, premeditated, and cold-blooded manner. Apparently, Krieger was beaten because he would not return two guns borrowed from Evelyn Liehsel, the woman arrested with Jackson in the station wagon. On the evening of the beatings, Calvin Fulton heard Appellant threaten to kill Krieger if the guns were not returned. Appellant went to Krieger's home at approximately 6:00 p.m., beat him, and forced him into the station wagon. He then took Krieger to the lake, beat him again, and apparently almost drowned him. Krieger was then taken to the lake house and bound while Appellant went to a bar. Upon his return, Appellant put Krieger back into the station wagon and began to look for a place to dump him from the car. Throughout the drive, which included a stop for gas, Krieger was beaten by Appellant with the baseball bat until he was dumped on the side of the road.

The events surrounding the killing spanned two to three hours, which negated the element of sudden passion. Additionally, nothing in the record indicates that Appellant was provoked by Krieger. Although there was testimony that Appellant was "mad," to raise the issue of voluntary manslaughter the evidence must show that the anger was the result of an act of provocation on the part of the deceased. *See Marquez,* 725 S.W.2d at 224. Furthermore, killing someone for refusing to return two guns to Appellant's girlfriend did not raise the issue of voluntary manslaughter because the response was not that of an ordinary person. *See Dobbins v. State,* 636 S.W.2d 276, 277 (Tex.App.—Fort Worth 1982, no pet.).[1] Point two is overruled.

In addition to the murder indictment, Appellant was also indicted for the aggravated kidnapping of Krieger. He filed a motion in limine requesting the court to instruct the prosecutor not to mention any prior criminal offenses or any offense pending against him without a hearing outside of the jury's presence to determine their admissibility. The motion was granted. Appellant's third point is that the court erred when it permitted testimony about his prior acts of misconduct and the extraneous kidnapping offense.

Lauralyn Jackson testified that Appellant "tied [Krieger] up." Appellant's objection to this testimony was sustained, and the jury was instructed to disregard the statement. However, the court refused to grant a mistrial. Appellant also objected to Jackson's testimony that Appellant wanted "something in hand to beat somebody up with," and to testimony concerning his prior acts of misconduct. The court overruled these objections. However, the court did sustain an objection to questions concerning Appellant's prior acts of misconduct.

Deputy Sullins testified that Appellant had been involved in a "very severe assault." Although Appellant failed to object

1. In *Dobbins,* the deceased was killed as a result of an argument over a football game. The court determined that the killing was not the response of an ordinary person. *Dobbins v. State,* 636 S.W.2d 276, 277 (Tex.App.—Fort Worth 1982, no pet.).

to this testimony, cross-examination revealed that his arrest was for assault rather than a "very severe assault." Appellant objected to Sullins' testimony that Krieger had been kidnapped and beaten badly as non-responsive. This objection was overruled.

Although a defendant should not be punished for a collateral crime or for being a criminal generally, the facts and circumstances surrounding the commission of the offense can be considered by the jury. *Lomas v. State*, 707 S.W.2d 566, 568 (Tex. Crim.App.1986). Events do not occur in a vacuum and, even though prejudicial, evidence explaining the context of an offense is usually admissible. *Mann v. State*, 718 S.W.2d 741, 744 (Tex.Crim.App.1986). If the evidence concerns a continuous transaction or another offense which is part of the case on trial, or closely interwoven with it, the evidence is admissible to show the context of the offense. *Taylor v. State*, 420 S.W.2d 601, 605 (Tex.Crim.App.1967). Here, because the kidnapping offense and prior acts of misconduct were closely interwoven with the offense charged, the jury was entitled to consider them. *See Moreno v. State*, 721 S.W.2d 295, 301 (Tex.Crim. App.1986).

The court's determination of the admissibility of prior conduct will not be disturbed on appeal unless there was an abuse of discretion. *Templin v. State*, 711 S.W.2d 30, 33 (Tex.Crim.App.1986). Appellant has failed to show such an abuse. Furthermore, any error was cured because the court instructed the jury to disregard the statements, and the statements were not of such a nature as to irrevocably prejudice the jury. *See Jackson v. State*, 536 S.W.2d 371, 372 (Tex.Crim.App.1976). Point three is overruled. Affirmed.

■ Appellant contends on rehearing that the court erred when it held that the baseball bat was illegally seized, but found beyond a reasonable doubt that its introduction into evidence did not contribute to his conviction or punishment. He argues that he was harmed by its introduction into evidence because the jury's deadly weapon finding affects the length of his incarceration. Accordingly, Appellant requests that the judgment be reformed to expunge the deadly weapon finding.

A weapon does not need to be introduced into evidence before a deadly weapon finding can be made. Even if the baseball bat had not been introduced as an exhibit, there was ample evidence before the jury to support a deadly weapon finding. This evidence included Krieger's statement that he had been beaten with a baseball bat, the testimony of the pathologist, and Jackson's eye-witness testimony that Krieger was beaten with a bat. The motion for a rehearing is denied.