In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00189-CV


______________________________




JERRIE REA, Appellant



V.



DAVID HAMPTON, M.D., Appellee




 


On Appeal from the 188th Judicial District Court


Gregg County, Texas


Trial Court No. 2001-1347-A




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Jerrie Rea has filed an appeal from a summary judgment taken against her in her medical
malpractice lawsuit against David Hampton, M.D. The judgment was signed on November 15,
2002, and the record was therefore due no later than January 14, 2003. See Tex. R App. P. 35.1. 
Further, as we reminded counsel by letter dated December 31, 2002, appellant was required to file
a docketing statement with this Court on or before January 10, 2003. See Tex. R. App. P. 32.

 On February 19, 2003, we again contacted counsel and reminded him that no clerk's record
had been requested or filed. We also granted him ten days to cure the defect and warned him that,
if he did not provide this Court with an adequate response, his appeal would be dismissed for want
of prosecution. See Tex. R. App. P. 42.3(b), (c). 

 Counsel has not contacted this Court, and no effort has been made to obtain a record. 

 We dismiss the appeal for want of prosecution.



 Jack Carter

 Justice


Date Submitted: March 7, 2003

Date Decided: March 10, 2003



 392 U.S. at 15. The Court held that even though a "stop" and "frisk" was
a search and seizure under the Fourth Amendment, Id. at 16-17, such actions by peace officers could
be reasonable under the Fourth Amendment. The Court adopted a two-part inquiry to determine the
reasonableness of such an investigative detention: (1) whether the officer's action was justified at
its inception; and (2) whether it was reasonably related in scope to the circumstances that justified
the initial interference. Id. at 19-20. 

 Under the first part, "the police officer must be able to point to specific and articulable facts
which, taken together with rational inferences from those facts, reasonably warrant that intrusion."
Id. at 21. In assessing whether the intrusion was reasonable, an objective standard is used. The
question is whether the facts available to the officer at the moment of the seizure or search would
cause a man of reasonable caution to believe that the action taken was appropriate. Id. at 21-22. 
An investigative detention not based on reasonable suspicion is unreasonable and therefore in
violation of the Fourth Amendment. 

 The second part of the Terry inquiry deals with the scope of the detention. The Supreme
Court noted that an investigative detention, "like any other search, must be strictly circumscribed by
the exigencies which justify its initiation." Id. at 25-26. The scope of the search must be limited
because a search reasonable at its inception may violate the Fourth Amendment because of its
excessive intensity and scope. Id. at 18. An investigative detention must be temporary and last no
longer than is necessary to effectuate the purpose of the stop. Davis v. State, 947 S.W.2d 240, 244
(Tex. Crim. App. 1997); Lopez v. State, 663 S.W.2d 587, 589 (Tex. App.-Houston [1st Dist.] 1983,
no pet.). A detention that is not temporary and reasonably related in scope to the circumstances that
justified the interference is unreasonable and violates the Fourth Amendment. Davis v. State, 947
S.W.2d at 243. 

 Freeman was traveling on the interstate highway in a rental vehicle when he was stopped by
a police officer for following another vehicle too closely. On appeal Freeman does not contest the
validity of the initial stop, but only the detention that followed. Essentially he argues that the
officer's actions failed the second part of the Terry inquiry because the scope of the detention went
beyond the purpose of the stop and was therefore unreasonable and unconstitutional. After being
stopped, the officer approached the driver's-side window and asked to see Freeman's driver's license
and the car rental agreement. After Freeman produced his Alabama driver's license and the rental
agreement, he stepped out of the vehicle at the officer's request and went to the rear. There the
officer questioned Freeman for a few minutes about his travel plans, who rented the vehicle, and the
identity of the passenger in the car. With Freeman remaining at the rear of the vehicle, the officer
then went to the passenger's-side window and questioned the female passenger. He asked her the
same type of questions for two or three minutes. The officer said it was while questioning the
passenger that he detected a smell emanating from the vehicle that indicated someone had been
smoking marihuana. 

 The officer stopped Freeman for the purpose of investigating the traffic violation. Once the
officer concluded the investigation of the traffic violation, he could no longer lawfully detain or
question Freeman unless he had reasonable suspicion to believe another offense was being
committed. We must therefore determine the time the officer concluded the investigation of the
traffic violation and when the officer first had reasonable suspicion to believe another offense was
being committed. 

 Freeman argues that the officer concluded the investigation of the traffic violation before
questioning the passenger and smelling the marihuana, so the continued detention of Freeman for
the purpose of questioning the passenger constituted an unreasonably prolonged detention. We
disagree. On this point, we find helpful the analysis by Professor W. LaFave, cited with approval
by the Supreme Court in Michigan v. Summers, 452 U.S. 692, 701 n.12, 101 S.Ct. 2587, 69 L.Ed.2d
340 (1981):

 It is clear that there are several investigative techniques which may be utilized effectively in
the course of a Terry-type stop. The most common is interrogation, which may include both
a request for identification and inquiry concerning the suspicious conduct of the person
detained. Sometimes the officer will communicate with others, either police or private
citizens, in an effort to verify the explanation tendered or to confirm the identification or
determine whether a person of that identity is otherwise wanted. . . . There is no reason to
conclude that any of the investigative methods of the type just listed are inherently
objectionable. . . .


3 W. LaFave, Search And Seizure § 9.2, pp. 36-37 (1978) (footnotes omitted). During the
investigation, the officer had the right to ask to see the driver's license and insurance papers,
information on the ownership of the vehicle, the driver's destination, and the purpose of the trip.
United States v. Shabazz, 993 F.2d 431, 437 (5th Cir. 1993); Mohmed v. State, 977 S.W.2d 624, 628
(Tex. App.-Fort Worth 1998, pet. ref'd). It was also reasonable for the officer to approach the
passenger and ask her similar questions. See Duff v. State, 546 S.W.2d 283, 286 (Tex. Crim. App.
1977). That is what happened here.

 The officer detected the smell of marihuana while talking to the passenger. He thus detected
the smell of marihuana before he concluded his valid investigation of the traffic violation. If, during
the course of a valid investigative detention, the officer develops a reasonable suspicion that the
detainee was engaged in or soon would engage in criminal activity, a continued detention is justified.
See Davis v. State, 947 S.W.2d at 245. During the course of this detention, both Freeman and his
passenger gave numerous incongruent answers to basic questions. The officer testified that Freeman
told him that he had flown to Dallas and was then driving back to Birmingham, Alabama; that a
relative had rented the vehicle; that his passenger was a cousin who was traveling with him to visit
Birmingham because she had never been there; that she was only going to stay a few hours and then
drive the rental vehicle back to Dallas; and that he had been arrested only for traffic violations, which
a later check proved untrue. The officer testified that the passenger gave one name, which she had
difficulty spelling, and her identification showed another name; that she gave one birth date and her
identification showed another; and that she would be staying in Birmingham for two or three weeks. 
The officer also testified that his primary duty was working drug interdiction and that rental vehicles
eastbound out of Dallas with out-of-state license plates such as this one were the kind for which he
looked. We find that these facts were sufficient to give rise to a reasonable suspicion that Freeman
was engaged in criminal activity. Thus, the continued detention was justified. 

 Although Freeman does not challenge the validity of the initial stop, he refers in his brief to
the fact that the officer testified that the apparent traffic stop had nothing to do with his stopping the
car since he was stopping cars that had indicators of drug trafficking. This, however, does not taint
the stop or the detention. The subjective intent of the officer is not determinative. As said by the
United States Supreme Court, we must allow "subjective intentions [to] play no role in . . . [our]
analysis." Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); Walter v.
State, 28 S.W.3d 538, 543 (Tex. Crim. App. 2000).

 Freeman also contends the search of the vehicle was improper. Freeman has standing to
challenge the constitutionality of the seizure or detention of his own person, but he lacks standing
to challenge the search of the rental vehicle. On appeal, Freeman presents no argument on the issue
of standing. Analysis of standing problems requires careful identification of the distinguishable
"searches" and "seizures" involved in a particular situation. 40 George E. Dix & Robert O.
Dawson, Texas Practice; Criminal Practice And Procedure § 4.52, at 203 (2d ed. 2001). 
A defendant may have standing to challenge the determinative reasonableness of the seizures
involved in his own detention and yet lack standing to challenge a search of the vehicle. Id.; see
Trinh v. State, 974 S.W.2d 872, 874 (Tex. App.-Houston [14th Dist.] 1998, no pet.). The search of
the vehicle, as well as evidence obtained in that search, may be the fruit of the earlier seizures that
the accused has standing to challenge. Dix, supra; see Trinh v. State, 974 S.W.2d at 874-75. That
is what happened in our case.

 The purpose of both the Fourth Amendment and Article I, § 9 is to safeguard a person's
legitimate expectation of privacy from unreasonable governmental intrusions. Villarreal v. State,
935 S.W.2d 134, 138 (Tex. Crim. App. 1996). An accused has standing under both of these 
constitutional provisions to challenge the admission of evidence obtained by a governmental
intrusion only if he had a legitimate expectation of privacy in the place invaded. Id. (citing Rakas
v. Illinois, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). The accused, because he has
greater access to the relevant evidence, has the burden of proving facts establishing a legitimate
expectation of privacy. Id. To carry this burden, the accused must normally prove: (a) that by his
conduct, he exhibited an actual subjective expectation of privacy, i.e., a genuine intention to preserve
something as private; and (b) that circumstances existed under which society was prepared to
recognize his subjective expectation as objectively reasonable. Id. (citing Smith v. Maryland, 442
U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)).

 A defendant has standing to challenge the search of an automobile he does not own if he has
permission from the owner to drive the vehicle, or if he has permission from some other person
authorized to give such permission, or if he otherwise has a legal right to use and control the vehicle. 
Nite v. State, 882 S.W.2d 587, 590-91 (Tex. App.-Houston [1st Dist.] 1994, no pet.) (defendant had
standing to challenge search of car registered to his wife in part because of community property
laws); State v. Bassano, 827 S.W.2d 557, 560 (Tex. App.-Corpus Christi 1992, pet. ref'd); Stine v.
State, 787 S.W.2d 82, 85 (Tex. App.-Waco 1990, pet. ref'd) (defendant who had authority to test
drive vehicles left for repairs at car repair shop had standing to challenge search of car which he used
to commit murder). A person driving a rental car does not have standing to challenge a search of the
vehicle if his driving of the car is prohibited by the vehicle rental agreement, even if he has the
permission of the person who rented the vehicle. See United States v. Boruff, 909 F.2d 111, 117 (5th
Cir. 1990); Rovnak v. State, 990 S.W.2d 863, 871 (Tex. App.-Texarkana 1999, pet. ref'd) (following
Boruff). Contra United States v. Kye Soo Lee, 898 F.2d 1034, 1038 (5th Cir. 1990) (driver of rental
truck, who had permission from the lessee but not the lessor, had standing to challenge the search). 
 The evidence shows that Freeman was driving a rental vehicle, he was not a driver registered
on the rental agreement, and there was no one in the vehicle who was a registered driver. When
asked by the traffic officer who the registered drivers were, Freeman stated they were relatives. The
fact that relatives may have rented the vehicle is not in itself evidence that Freeman had legal
authority to drive the vehicle. See Flores v. State, 871 S.W.2d 714, 719-20 (Tex. Crim. App. 1994)
(defendant driving vehicle registered in mother's name lacked standing to contest vehicle search). 
No evidence was introduced to show that Freeman had any interest in or right to use the vehicle. 
There is not even a bare assertion that he had such a right. Thus, Freeman failed to demonstrate that
he had a legitimate expectation of privacy in the car. Although Freeman had standing to challenge
the detention, which we have upheld as constitutional, he lacked standing to challenge the search of
the rental vehicle. 

 For the reasons stated, we affirm the judgment. 

 


 William J. Cornelius

 Chief Justice


Date Submitted: October 24, 2001

Date Decided: November 30, 2001


Publish
1. Because Freeman presents no argument on appeal that the United States Constitution and 
Texas Constitution should be interpreted as having different meanings, we decline to consider that
issue here. See Johnson v. State, 864 S.W.2d 708, 720 (Tex. App.-Dallas 1993), aff'd, 912 S.W.2d
227 (Tex. Crim. App. 1995).