COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-149-CR
 
 
DOUGLAS 
WAYNE MATTHEWS                                              APPELLANT
 
V.
 
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
THE 372ND DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION *
 
------------
        Appellant 
Douglas Wayne Matthews appeals from a pretrial ruling denying his motion to 
suppress, after which he entered his plea of guilty pursuant to a plea bargain 
agreement to the charge of possessing four or more grams but less than two 
hundred grams of cocaine with the intent to deliver. The trial court convicted 
him and sentenced him to thirty years’ confinement in the Institutional 
Division of the Texas Department of Criminal Justice. Because we hold that the 
trial court erred in denying Appellant’s motion to suppress, we reverse the 
trial court’s judgment and remand this case for a new trial.
Background 
Facts
The Search and Arrest
        The 
record before us reveals three searches—the search of a truck, the search of a 
gym bag located within the truck, and the search of a shaving kit inside the gym 
bag.
        The 
police arrived with a warrant to search Appellant’s cousin’s house, 
including all vehicles and detached buildings within the curtilage, and to 
arrest a man named “Doug.” While executing the warrant, the police did not 
find anyone in the house. They did find people in the detached garage within the 
fence surrounding the lot on which the house was located. The police patted down 
all the people in the garage, laid them face down on the floor, and cuffed them. 
The police asked Appellant for his name and he said, “Doug.” The police 
noticed that a green truck was parked on the curb and searched the truck. The 
truck was driven by Appellant but was owned by his mother. The police arrested 
Appellant for possession of crack cocaine they found in a shaving kit inside a 
gym bag inside the truck.
        Appellant 
was indicted on two counts of possession of a controlled substance, namely 
cocaine, of four grams or more, but less than two hundred grams, with the intent 
to deliver. The indictment also contained a repeat offender notice. Appellant 
filed a motion to suppress the evidence, which the trial court denied. Appellant 
then agreed to a plea bargain, reserving the right to appeal the denial of the 
motion to suppress.
The Warrant and Suppression Hearing
        The 
warrant authorized the search of “all vehicles and detached buildings within 
the curtilage therein named.” Sergeant Stanford testified for the State that 
there were several vehicles parked in the street and that Appellant’s truck, 
also parked in the street, had one wheel in the driveway. He testified that 
Appellant admitted that it was his truck. When he asked Appellant his name, 
Appellant replied that it was Doug. Sergeant Stanford testified,
 
I knew that the search warrant listed a man by the name of Doug, that the 
descriptions given to me on the search warrant and by Officer Broadwater closely 
matched the Defendant. I then asked the Defendant if he would mind if I searched 
his truck. He said “Go ahead.”
 
I asked him where the keys were. He said his right front pocket, so I reached 
into his right front pocket and removed the keys.
 
        A 
different officer, Officer Blaydes, actually conducted the search of the truck. 
Behind the driver’s seat, between the driver and passenger seats, he found a 
gym bag that contained a shaving kit. Inside the shaving kit, he located a rock 
of crack cocaine. Officer Blaydes said the truck was on the edge of the driveway 
and curb line, straddling the curb line and the end of the driveway. He could 
not say how many tires were actually on the driveway. Blaydes did know that 
there were several cars parked on and around the property and testified that 
there might have been another vehicle in the driveway.
        Although 
Officer Blaydes testified that someone ran the plates of the truck to determine 
the registered owner, there was no evidence of the result of the record search. 
He did not know who provided the keys to the truck.
        Appellant 
testified that his truck was parked on the street with no part of it in the 
driveway. Two cars were in the driveway. One had been there a couple of months 
at the time of the arrest, and State’s exhibits 2 and 3, photographs taken at 
a later time, showed that it had three flat tires. The State and Appellant 
agreed that the truck Appellant drove belonged to his mother and that Appellant 
and his mother lived at the same address. His testimony that he drove the truck 
with his mother’s permission was uncontroverted. Appellant testified that he 
did not give anyone consent to search the truck.
        At 
the suppression hearing, the State argued,
 
First of all, it's our contention that it was a consensual search; and secondly, 
the officers had probable cause to search this vehicle. It's in the search 
warrant, which has been admitted as State's Exhibit 1, that they listed all 
vehicles within the curtilage. And they had probable cause because they knew it 
was his car. They knew that this car was driven by a person who in the past had 
dealt drugs at this location. They know this because there's an undercover buy 
that they set up.
 
It's parked half in the curtilage, little bit in the street. It was partially in 
the street, partially in the driveway. It's within the curtilage.
 
In 
addition, the automobile exception, because of the mobility of vehicles and the 
destructibility of evidence, it is also our contention that this was a good 
search.
 
 
        The 
State also argued in the trial court, as it does on appeal, that Appellant 
lacked standing to challenge the search because the truck was not Appellant’s. 
That is, the State argued that the police search of the truck was lawful because 
the truck was Appellant’s but that Appellant lacked standing to challenge the 
search because the truck was not his.
        The 
trial court found that the accepted definition of curtilage was inappropriate in 
an urban setting and redefined curtilage to include the public street running 
beside the property described in the warrant. The court found that the vehicle 
parked in the street was parked within the curtilage of the house because it was 
parked on the street that touched the property discussed in the search warrant.
        The 
trial court also found that the automobile could be searched pursuant to the 
automobile exception to the warrant requirement. The court declined to find that 
Appellant voluntarily consented to the search. The court limited its ruling to a 
finding that the truck was searched within the scope of the warrant because the 
street was part of the curtilage and “lawful to be searched independent of the 
scope of the warrant based upon the information known to the officers and the 
circumstances . . . which is implied in the record.” The trial judge also 
stated, “It’s inferential in the record that other substances were found on 
the persons, the details of which are not in the record, so I wouldn’t 
speculate by adding more fat to the fire of the issue of probable cause to 
search the vehicle at the scene.” The trial court found the record 
insufficient to show Appellant was the person named in the warrant. The court 
also found the record insufficient to determine whether Appellant had standing 
and consequently assumed standing in hearing and denying Appellant’s motion to 
suppress.
Legal Analysis
Standing
        Before 
we reach the merits of Appellant’s complaints, we must first address the issue 
of standing. The State argues on appeal, as it did in the trial court, that 
Appellant had no standing to challenge the search of the truck he was driving. 
Yet at the hearing on the motion to suppress, the State argued, “[I]t's our 
contention that it was a consensual search; and secondly, the officers had 
probable cause to search this vehicle. . . . [T]hey had probable cause because 
they knew it was his car.”
        The 
State adopts inconsistent positions. It argues on the one hand that Appellant 
had no standing to contest the search of the truck because it was not his truck 
and at the same time that Appellant exercised sufficient exclusive care, 
custody, and control of the truck to establish the nexus between the contents, 
including the contents of a shaving kit inside a gym bag inside the truck, and 
himself. While a party may take alternative positions, a party may not take 
inconsistent positions in a judicial proceeding.
        We 
addressed the circumstances under which a party may be judicially estopped from 
taking inconsistent positions in judicial proceedings in Goldman v. White 
Rose Distributing Company: [1]
 
Judicial estoppel holds that a party who has made a sworn statement in a 
pleading, a deposition, oral testimony, or affidavits in a judicial proceeding 
is judicially estopped from maintaining a contrary position in a subsequent 
proceeding. The doctrine is based on public policy that prohibits a litigant 
from maintaining inconsistent positions in separate judicial proceedings. The 
purpose of the doctrine is “to uphold the sanctity of the oath and to prevent 
abuse of the judicial process.”
 
. 
. . .
 
White 
Rose claims that the statements made by its attorney during the first trial 
cannot be considered in determining judicial estoppel because that doctrine only 
applies to statements made under oath. However, an attorney is an officer of the 
court and, as such, is “an instrument or agency to advance the ends of 
justice.” An attorney may bind a party to a particular position. Indeed, 
courts routinely rely on counsel's statements during oral argument and rely on 
these representations when deciding cases.[2]
 
 
        We 
hold that the State is judicially estopped from arguing that Appellant lacked 
standing to challenge the search of the vehicle that the State argued in the 
trial court belonged, in the legal sense, to Appellant. In an abundance of 
caution, we nevertheless address the issue of Appellant’s standing to 
challenge the search of the vehicle.
        Generally, 
the right to challenge the lawfulness of a search is limited to persons with 
“standing,” that is, to those who have been aggrieved by a search and 
seizure.[3]  When a search is contested, the 
accused establishes standing, or his right to complain of the search, by showing 
that he had a reasonable expectation of privacy in the area searched.[4]  A mere allegation by an accused that he was a victim 
of an illegal search or seizure, if not disputed by the State, is sufficient to 
establish standing to challenge a search or seizure.[5]  
Once the State challenges the allegation, the accused carries the burden of 
proof.[6]
        The 
Court of Criminal Appeals recently explained in Kothe v. State,[7]
 
Proof of “a reasonable expectation of privacy” is at the forefront of all 
Fourth Amendment claims. Any defendant seeking to suppress evidence obtained in 
violation of the Fourth Amendment must first show that he personally had a 
reasonable expectation of privacy that the government invaded.[8]  
He must prove that he was a “victim” of the unlawful search or seizure.[9]  He has no standing to complain about the invasion of 
someone else's personal rights. [10]  Only 
after a defendant has established his standing to complain may a court consider 
whether he has suffered a substantive Fourth Amendment violation.[11]  Although we defer to the trial court's factual 
findings and view them in the light most favorable to the prevailing party, we 
review the legal issue of standing de novo.[12]
  
In this case, the State failed to challenge Mr. Kothe's standing to complain 
about the present search or seizure in the trial court.  Mr. Kothe argues 
that the State cannot raise the issue on appeal in the context of a warrantless 
search when the State was the losing party in the trial court.  We 
disagree.  This Court has previously stated that, because standing is an 
element of a Fourth Amendment claim, the State may raise the issue of standing 
for the first time on appeal, even when the defendant is the prevailing party in 
the trial court.[13]  The appellate court may 
raise the issue of standing on its own;[14] it may 
analyze that issue as a part of the Fourth Amendment claim presented;[15] or it may conclude that the State has forfeited that 
argument because it failed to raise it in the trial court.16, [17]
 
        The 
owner of a vehicle has standing to contest the search because the owner has an 
expectation of privacy.[18]  A defendant also 
has standing to challenge the search of a car he does not own if he shows that 
he gained possession of the car from the owner with the owner’s consent or 
from someone authorized to give permission to drive it.[19]
        In 
the case before us, the trial court found that Appellant was driving his 
mother’s car, that they lived at the same address, and that the car was 
usually driven by Appellant and his wife.  Appellant testified without 
contradiction that the vehicle was never driven by his mother.  This 
evidence is uncontroverted, and there is no evidence that the truck was stolen.  
Deferring to the trial court’s determination of facts, and reviewing the 
determinations of law de novo, we hold that Appellant has satisfied his burden 
to show standing to contest the search of the truck.
The Validity of the Search Pursuant to the Search 
Warrant
        Appellant 
does not challenge the validity of the warrant. Instead, in his first point, he 
argues that the search exceeded the scope of the warrant.  The warrant 
commanded peace officers to search
 
the premise, to include all vehicles and detached buildings within the curtilage 
therein named and described at 3521 Ave D . . . and . . . arrest . . . a black 
male described as follows: approximately 40 years of age, 6'-04“ and 270 lbs., 
short black hair, thin beard, and uses the name “Doug”, and others accused 
of concealing said controlled substance, namely “crack” cocaine.
 
 
The 
question here is whether Appellant’s vehicle was located within the curtilage 
of 3521 Ave. D when the police entered it.  The answer is no.
        Curtilage 
is “the land immediately surrounding and associated with the home” and 
“warrants the [same] Fourth Amendment protections that attach to the home.”[20]  The U.S. Supreme Court has recognized that the 
Fourth Amendment protects the curtilage of a house and identified curtilage as 
“the area [that] harbors the intimate activity associated with the ‘sanctity 
of a man's home and the privacies of life.’”[21]  
“Whenever government agents enter into the curtilage, they necessarily intrude 
upon the individual's reasonable expectation of privacy.”[22]
        Whether 
a particular area is included within the curtilage of a home is determined by 
whether the defendant had a reasonable expectation of privacy in the area.[23]  Factors considered are the proximity of the area 
to the home, whether the area is included within an enclosure surrounding the 
home, the nature of the use to which the area is put, and the steps taken to 
protect the area from observation by passersby.[24]  
A public place is not within the curtilage of a home.[25]  
In the Texas Penal Code, a “public place” is defined as “any place to 
which the public or a substantial group of the public has access and includes, 
but is not limited to, streets, highways, and the common areas of schools, 
hospitals, apartment houses, office buildings, transport facilities, and 
shops.”[26]
        In 
the case now before this court, Appellant’s truck was parked on the curb in 
the public street. The trial court found as a fact that a small percentage of 
the vehicle was on the “actual property of the premises.”  Only Officer 
Stanford testified that any portion of the truck was in the driveway.  He 
testified that one wheel was in the driveway.  The trial court also 
concluded as a matter of law that
 
the street, public street, touching the property of a vehicle parked at the 
premises is part of the curtilage stretching beyond the common law definition of 
curtilage, which included the farm and the premises and property and fence; that 
under an urban setting, the lawful parking area of the curb in front of a 
residence is within lawful curtilage for purposes of a reasonable scope of a 
search warrant under the Fourth Amendment to the United States Constitution, as 
well as the Texas Constitution, and that that would be curtilage, the same as 
the hitching post outside, adjacent to the fence of the old homestead would be 
part of the curtilage if it adjoins the property.  Even though it is public 
land, it's the curtilage of the property.  And being public property and 
land, there's no reasonable expectation of privacy on what could be seen on a 
vehicle on a public street, and I find that's the curtilage of the property that 
is immediately adjacent to that part of the street, if it's lawful parking.
 
        As 
the trial court pointed out, the street is a public place.[27]  
As a public place, it is by definition not part of “the area [that] harbors 
the intimate activity associated with the ‘sanctity of a man's home and the 
privacies of life.’“[28]

 


 
        Examining 
the photograph of the street beside the property in question, we note that a 
fence separates the backyard from the public sidewalk and stretches from the 
house to the detached garage. Between the fence and the street are a sidewalk, 
grass, and a curb.
        A 
sidewalk is defined as that portion of a street that is between a curb or 
lateral line of a roadway and the adjacent property line and is intended for 
pedestrian use.[29]  Sidewalks in a city are a 
part of the street and subject primarily to the control of the city rather than 
the abutting property owners.[30] For purposes of 
public intoxication, a street and any adjoining sidewalk are clearly public 
places.[31]
        The 
driveway in the photograph crosses the sidewalk and joins the street at the 
curb.  Even if, as Stanford testified, a wheel of Appellant’s truck was 
in the driveway, the truck was nevertheless in a public place and not within the 
curtilage because the wheel could not have extended beyond the portion of the 
driveway touching the curb and sidewalk.  The trial court erred in finding 
that the public sidewalk, curb, and street were within the curtilage of the home 
in question.  Because the warrant authorized the search of vehicles within 
the curtilage of the home only, and because the truck was not located within the 
curtilage of the home, the search of Appellant’s truck exceeded the scope of 
the warrant.  We sustain Appellant’s first point.
The Automobile Exception
        In 
his second point, Appellant contends that the trial court erred in denying his 
motion to suppress on the basis of the automobile exception. We agree. When a 
warrant is determined to be invalid, we review the search to determine if it can 
be upheld under an exception to the warrant requirement.[32]  
We do likewise when a search exceeds the scope of the warrant, as is the case 
here.[33]  The State bears the burden to show 
that the search falls within one of the narrow exceptions to the warrant 
requirement for the search to be constitutionally permissible.[34]  
Applicable in this case is the automobile exception, which permits officers to 
conduct a warrantless search of an automobile so long as there is probable cause 
to believe that a crime has been committed and that there is contraband located 
in the vehicle.[35]
        “The 
word 'automobile' is not a talisman in whose presence the Fourth Amendment fades 
away and disappears.”[36]  Probable cause is 
still required to justify the search of an automobile, even if a warrant is not.  
“[T]he presence of an automobile on suspected premises, without more, does not 
give rise to search that automobile.”[37]  
Probable cause exists where officers have reasonably trustworthy information 
sufficient to warrant a reasonable belief that an offense has been or is being 
committed.[38]
        In 
the case now before this court, the record reflects, and the trial court 
recognized, that there is no evidence that Appellant was the person named in the 
warrant and no evidence that any contraband was found on any person or on the 
premises named in the warrant as a result of the execution of the warrant or 
otherwise. The trial court found that, even though the record did not show 
probable cause to search the truck, the search of Appellant’s truck was lawful 
“independent of the scope of the warrant based upon the information known to 
the officers and the circumstances . . . which is implied in the record.”  
The trial judge also stated, “It’s inferential in the record that other 
substances were found on the persons, the details of which are not in the 
record, so I won’t speculate by adding more fat to the fire on the issue of 
probable cause to search the vehicle at the scene.”
        That 
is, the trial court concluded the search was lawful independent of the scope of 
the warrant because, although not included in the record, the court could infer 
information known to the officers and that drugs were found on other persons at 
the scene.  The trial court misstated and misapplied the law. The State 
bears the burden of justifying a search. [39]  
In this case, the burden is more onerous because the State must justify a 
warrantless search.   The justification for the search must appear in 
the record.[40]  We are not allowed to 
supplement an insufficient record by inferring information necessary to the 
State’s sustaining its burden. Because the State failed to sustain its burden 
of showing probable cause to justify the warrantless search, the search of 
Appellant’s truck is not justified under the automobile exception. We sustain 
Appellant’s second point.
Consent
        We 
must uphold a trial court's ruling on a motion to suppress if it is reasonably 
supported by the record and is correct under any theory of law applicable to the 
case.[41]  Even though the State does not raise 
the consent exception on appeal, because it was raised below, we address it 
here.
        The 
Texas and U.S. Constitutions both guarantee the right to be secure from 
unreasonable searches and seizures made without probable cause.[42]  Under the Fourth and Fourteenth Amendments, “a 
search conducted without a warrant issued upon probable cause is ‘per se 
unreasonable . . . subject only to . . . specifically established and 
well-delineated exceptions.’”[43]  A search 
conducted with the consent of the suspect is one such exception, so long as the 
consent is voluntary.[44]  The validity of a 
consent to search is a question of fact to be determined from all the 
circumstances.[45]  The federal constitution 
requires the State to prove the validity of the consent by a preponderance of 
the evidence; the Texas Constitution requires the State to show by clear and 
convincing evidence that the consent was valid.[46]  
At a suppression hearing, the trial judge is the sole and exclusive trier of 
fact and judge of the credibility of the witnesses and their testimony.[47]  In reviewing a trial court's ruling on a motion to 
suppress, we give almost total deference to a trial court's determination of 
historical facts, and we review de novo the court's application of the law.[48]
        In 
the case now before this court, the trial judge considered the witnesses and 
their testimony and announced that he was not convinced that Appellant 
voluntarily consented to the search of his truck.  He found that the State 
failed to sustain its burden of showing free and voluntary consent to search.  
Applying the appropriate standard of review,[49] we 
will not disturb the trial court’s determination.
Conclusion
        Having 
held that the search of Appellant’s truck exceeded the scope of the warrant 
and is not justified by either the automobile or consent exception to the 
warrant requirement, we hold that the trial court abused its discretion in 
overruling Appellant’s motion to suppress the fruits of the search of his 
truck.  We reverse the trial court’s judgment and remand this cause to 
the trial court for trial without the illegally seized evidence.
  
                                                          LEE 
ANN DAUPHINOT
                                                          JUSTICE
 
 
 
PANEL 
A:   LIVINGSTON, DAUPHINOT, and MCCOY, JJ.
 
LIVINGSTON, 
J. filed a dissenting opinion.
 
PUBLISH
 
DELIVERED: 
April 28, 2005
 


COURT OF APPEALS
SECOND 
DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-149-CR

 
DOUGLAS 
WAYNE MATTHEWS                                              APPELLANT
  
V.
 
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
THE 372ND DISTRICT COURT OF TARRANT COUNTY
 
------------
 
DISSENTING OPINION
 
------------
        I 
respectfully dissent from the majority’s opinion in several respects.  
First, as to the question of appellant’s standing, the majority points to 
inconsistent positions the State has taken regarding standing.  However, it 
is really appellant who has taken inconsistent positions on standing.
        When 
appellant testified at the suppression hearing, he denied giving officers 
consent to search and said that if he had been asked for consent to search he 
would have told them to ask his mother because it was not his truck.  
“Because it wasn’t my vehicle. . . . I can’t consent [sic] something 
that’s not mine. . . . I don’t have possession of the truck.”  
Therefore, while I agree with the majority’s position that the appellant had 
standing to contest to the search because the trial court found he had 
permission to drive the truck,  I cannot agree that the State was the only 
party that took inconsistent positions.
        In 
appellant’s first point he challenges the validity of the search pursuant to 
the search warrant claiming that the vehicle was not located within the scope of 
the warrant.  The majority goes to great lengths to conclude that the trial 
court erroneously determined that the vehicle was “within the curtilage of the 
home,” the language used in the description for location for vehicles in the 
search warrant.  While I agree with the majority that a street is a public 
place, I do not agree that a sidewalk, on this record, is.  Further, 
whether the sidewalk is within the curtilage of the premises to be searched is 
irrelevant.  The vehicle was located partially in the driveway of the 
premises and partially in the adjacent public street.  Therefore, the only 
question to be addressed by the trial court and now by us was whether a vehicle 
that is partially parked on a street and partially parked in a driveway is 
within the “premises” of the subject house as described.
        The 
trial court specifically found, as a matter of fact, that the truck was 
partially located in the driveway of the subject premises and therefore actually 
within the “premises to be searched.”  The trial court found
 
based upon a part of the vehicle actually extending onto the property, the 
amount of the vehicle in the Court’s mind doesn’t matter, but the Court 
finds that a small percentage of the vehicle was placed on--was on the actual 
property of the premises, therefore justifying a search of the remainder of the 
vehicle that extended onto the public street parking area.
 
So 
even if it’s not curtilage, the vehicle is still partially on the premises as 
premises is defined, versus curtilage of the property.
 
The 
search warrant authorized a search of the “premise, to include all vehicles 
and detached buildings within the curtilage therein named and described [as] 
3521 Ave D.”  Two officers testified the truck was partially in the 
driveway, which is actually on the premises and which is within the warrant.  
Therefore, we do not need to reach the question of whether the vehicle was 
located within the curtilage because the trial court found, as a matter of fact, 
that the truck was located in the driveway.  This finding is supported by 
the testimony of the two officers.  From this factual finding flows the 
inescapable legal conclusion that the vehicle was located on the premises.
        Therefore, 
I would conclude that the search warrant itself authorized the search of the 
vehicle because it was located on the premises described within the search 
warrant.  Because I would uphold the search of the vehicle on this basis, I 
believe the discussion regarding the automobile exception and consent is 
unnecessary.  For all these reasons, I would affirm the judgment of the 
trial court.
 
 
                                                                  TERRIE 
LIVINGSTON
                                                                  JUSTICE
 
 
DELIVERED: 
April 28, 2005


 
NOTES
 
*  Majority Opinion by Justice Dauphinot;  Dissenting 
Opinion by Justice Livingston
 
    
  MAJORITY OPINION NOTES
1.  936 S.W.2d 393 (Tex. App.—Fort Worth 1996), vacated 
pursuant to settlement agreement, 949 S.W.2d 707 (Tex. 1997).
2.  
Id. at 397-98 (citations omitted).
3.  
Goehring v. State, 627 S.W.2d 159, 164 (Tex. Crim. App. 1982).
4.  
Chapa v. State, 729 S.W.2d 723, 725-29 (Tex. Crim. App. 1987).
5.  
Russell v. State, 717 S.W.2d 7, 9 n.6 (Tex. Crim. App. 1986).
6.  
Id.
7.  
152 S.W.3d 54 (Tex. Crim. App. 2004).
8.  
See Rakas v. Illinois, 439 U.S. 128, 139, 99 S. Ct. 421, 428 (1978) 
(noting that issue of standing involves two inquiries: first, whether defendant 
has alleged an “injury in fact”; and second, “whether the proponent is 
asserting his own legal rights and interests rather than basing his claim for 
relief upon the rights of third parties”).  “Fourth Amendment rights 
are personal rights which, like some other constitutional rights, may not be 
vicariously asserted.”  Alderman v. United States, 394 U.S. 165, 
174, 89 S. Ct. 961, 966-67 (1969).
9.  
See generally 5 Wayne R. Lafave, 
Search and Seizure § 11.3, at 118 (3d ed. 1996).
10.  
United States v. Salvucci, 448 U.S. 83, 84-85, 100 S. Ct. 2547, 2549 
(1980); Villarreal v. State, 708 S.W.2d 845, 849-50 (Tex. Crim. App. 
1986).
11.  
See Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); United 
States v. Pierce, 959 F.2d 1297, 1303 (5th Cir. 1992); United States v. 
Brazel, 102 F.3d 1120, 1147 (11th Cir.), cert. denied, 522 U.S. 822 
(1997).  Because warrantless searches and seizures are presumed to be 
unreasonable, the prosecution must establish that any search or seizure was 
justified under an exception to the warrant requirement.  Coolidge v. 
New Hampshire, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 2032 (1971).
12.  
State v. Johnson, 896 S.W.2d 277, 285 (Tex. App.—Houston [1st Dist.] 
1995), aff'd, 939 S.W.2d 586 (Tex. Crim. App. 1996); see United States 
v. Phillips, 382 F.3d 489, 494 (5th Cir. 2004) (noting that “[w]hether a 
defendant has standing to contest an allegedly illegal search is a question of 
law” and is reviewed de novo); United States v. DeLuca, 269 F.3d 
1128, 1131 (10th Cir. 2001) (stating that courts review de novo the issue 
of whether a defendant has standing to challenge a search).
13.  
State v. Klima, 934 S.W.2d 109, 110-11 (Tex. Crim. App. 1996).
14.  
See State v. Brady, 763 S.W.2d 38, 42 (Tex. App.—Corpus Christi 1988, 
no pet.) (addressing issue of defendant's standing to challenge search although 
not raised by either State or defendant in trial or appellate court).
15.  
See Klima, 934 S.W.2d at 110-11.
16.  
See, e.g., United States v. Price, 54 F.3d 342, 346 (7th Cir. 1995) 
(stating that “[b]ecause Rakas’ principle of ‘standing’ is rooted 
in the substantive law of the Fourth Amendment and not Article III [jurisdiction 
of courts], the government may waive these types of standing objections”) 
(citation omitted); see also United States v. DeGasso, 369 F.3d 1139, 
1143 n.3 (10th Cir. 2004) (concluding that standing issue was waived because 
government had never raised it).
17.  
Kothe, 152 S.W.3d at 59-60 (footnotes in original).
18.  
See Villarreal, 935 S.W.2d at 138.
19.  
State v. Crisp, 74 S.W.3d 474, 480-81 (Tex. App.—Waco 2002, no pet.); Rovnak 
v. State, 990 S.W.2d 863, 867 (Tex. App.—Texarkana 1999, pet. ref'd); Stine 
v. State, 787 S.W.2d 82, 85 (Tex. App.—Waco 1990, pet. ref'd) (holding 
defendant who had authority to test drive vehicles left for repairs at car 
repair shop had standing to challenge search of car which he had used to commit 
murder).
20.  
Oliver v. United States, 466 U.S. 170, 180, 104 S. Ct. 1735, 1742 (1984); 
accord Gonzalez v. State, 588 S.W.2d 355, 360 (Tex. Crim. App. 
1979).
21.  
United States v. Dunn, 480 U.S. 294, 300, 107 S. Ct. 1134, 1139 (1987) 
(quoting Boyd v. United States, 116 U.S. 616, 630, 6 S. Ct. 524, 532 
(1886)).
22.  
Bower v. State, 769 S.W.2d 887, 897 (Tex. Crim. App.) (quoting Kann v. 
State, 694 S.W.2d 156, 160 (Tex. App.—Dallas 1985, pet. ref'd)), cert. 
denied, 492 U.S. 927 (1989), overruled on other grounds, Heitman 
v. State, 815 S.W.2d 681 (Tex. Crim. App. 1991).
23.  
Id. at 896.
24.  
Dunn, 480 U.S. at 301, 107 S. Ct. at 1139.
25.  
Evans v. State, 995 S.W.2d 284, 285-86 (Tex. App.—Houston [14th 
Dist.] 1999, pet. ref’d).
26.  
Tex. Penal Code Ann. § 
1.07(a)(40) (Vernon Supp. 2004-05).
27.  
Id.
28.  
Dunn, 480 U.S. at 300, 107 S. Ct. at 1139.
29.  
Tex. Transp. Code Ann. § 
541.302(16) (Vernon 1999); City of El Paso v. Chacon, 148 S.W.3d 417, 423 
(Tex. App.—El Paso 2004, pet. denied); City of Wichita Falls v. Ramos, 
596 S.W.2d 654, 657 (Tex. Civ. App.—Fort Worth 1980, writ ref'd n.r.e.).
30.  
Hixon v. State, 523 S.W.2d 711, 713 (Tex. Crim. App. 1975); Grapotte 
v. Adams, 130 Tex. 587, 111 S.W.2d 690, 691 (1938); Parra v. F.W. 
Woolworth Co., Inc., 545 S.W.2d 596, 598 (Tex. Civ. App.—El Paso 
1977, no writ); Richardson v. Walsh, 292 S.W.2d 855, 856 (Tex. Civ. 
App.—San Antonio 1956, no writ).
31.  
Loera v. State, 14 S.W.3d 464, 468 (Tex. App.—Dallas 2000, no pet.); King 
v. State, 732 S.W.2d 796, 803 (Tex. App.—Fort Worth 1987, pet. ref'd).
32.  
Adkins v. State, 717 S.W.2d 363, 365-66 (Tex. Crim. App. 1986).
33.  
See Snider v. State, 681 S.W.2d 60, 62-63 (Tex. Crim. App. 1984); see 
also United States v. Watkins, 179 F.3d 489, 494-95, 499 (6th Cir. 1999).
34.  
United States v. Robinson, 414 U.S. 218, 243, 94 S. Ct. 467, 480 (1973); Russell, 
717 S.W.2d at 9-10.
35.  
Chambers v. Maroney, 399 U.S. 42, 48-49, 90 S. Ct. 1975, 1979-80 (1970); Amos 
v. State, 819 S.W.2d 156, 160-61 (Tex. Crim. App.), cert. denied, 504 
U.S. 917 (1992).
36.  
Coolidge, 403 U.S. at 461, 91 S. Ct. at 2035.
37.  
State v. Barnett, 788 S.W.2d 572, 575 (Tex. Crim. App. 1990).
38.  
McGee v. State, 105 S.W.3d 609, 614 (Tex. Crim. App.), cert. denied, 
540 U.S. 1004 (2003).
39.  
Robinson, 414 U.S. at 243, 94 S. Ct. at 480; Russell, 717 S.W.2d 
at 9-10.
40.  
See O'Hara v. State, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000).
41.  
State v. Steelman, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002); Romero 
v. State, 800 S.W.2d 539, 543-44 (Tex. Crim. App. 1990).
42.  
U.S. Const. amend. IV; Tex. Const. art. I, § 9.
43.  
Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043 (1973) 
(quoting Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 514 
(1967)); Rayford v. State, 125 S.W.3d 521, 528 (Tex. Crim. App. 2003), cert. 
denied, 125 S. Ct. 39 (2004).
44.  
Schneckloth, 412 U.S. at 219, 248-49, 93 S. Ct. at 2059.
45.  
Ohio v. Robinette, 519 U.S. 33, 40, 117 S. Ct. 417, 421 (1996); Maxwell 
v. State, 73 S.W.3d 278, 281 (Tex. Crim. App.), cert. denied, 537 
U.S. 1051 (2002).
46.  
Maxwell, 73 S.W.3d at 281.
47.  
Id.
48.  
Id.; Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).
49.  
Maxwell, 73 S.W.3d at 281; Guzman, 955 S.W.2d at 89.